## NORMAN M. REHG v. VERMILION BOAT & OUTING COMPANY.[1]

June 27, 1930.

No. 28,017.

*Courtney & Courtney,* for appellant.
*McMahon & McMahon* and *Hugh J. McClearn,* for respondent.

HOLT, J.

A directed verdict was returned for defendant, and plaintiff appeals from the order denying his motion for a new trial.

Defendant owned an island in Lake Vermilion on which was a summer resort, a hotel and several cottages. Back of the hotel was a water-tower consisting of a tank ten feet in diameter and ten feet

[1]Reported in 231 N. W. 611.

high, standing upon four upright timbers or legs about 15 or 18 feet long and 8 inches square braced with planks. An inch iron pipe ran from the tank to a pumphouse near the lake shore and from the pump out into the lake. A gasolene motor operated the pump. The buildings and equipment including the tank were erected in 1913 or 1914.

Defendant had given one Chamberlain an option to buy the property, both real and personal, previous to 1925. Late in the summer of that year plaintiff became interested in negotiating a disposition of the property, and in June, 1926, obtained an assignment of the Chamberlain option and an extension thereof until January, 1927. He also procured defendant's consent to operate the resort and did so for the season of 1926, running it during the months of July and August and part of September. Plaintiff kept up negotiations for the purchase of the property on more favorable terms, and on April 11, 1927, obtained an option at a greatly reduced price. It was also understood that plaintiff might remain in possession and operate the resort during the season of 1927. He was there and inspected the premises in April when the option was executed. And in the latter part of May he moved out to do the incidental repairs necessary to the opening of such a place for guests. He claims that he had been assured by the manager of defendant, Mr. Fay, that no particular repairs were needed except on the gasolene engine.

On May 28, 1927, he was engaged in repairing the engine. He had one Olson to assist. He knew that the water-tank leaned to one side, and on that day directed Olson to raise two of the four supports or legs so as to make the tank level. To do this a plank was nailed to the legs to be raised. Plaintiff assisted Olson in this. Then by means of a jack, placed under the plank near the leg to be raised, it was lifted four or five inches off the ground and rocks placed under the end thereof. Olson noticed that the ends of the legs or supports were somewhat discolored and affected by rot. The tank being leveled, the pump was started. After lunch plaintiff mounted a ladder attached to the tower to note how the water

was flowing in. The tank was then about two-thirds full. When full it would hold about 25 tons of water. As plaintiff was leaning over the rim of the tank the structure collapsed and he was severely injured. He brought this action to recover damages. When plaintiff rested a verdict was directed for defendant on the ground that no cause of action had been proved.

The action is not based on defendant's negligence. Plaintiff on the trial and on the appeal disclaims any right to recover on the ground of negligence. The charge against defendant in the complaint is that defendant

"represented to plaintiff that said buildings and equipment, including said water-tank and tower, had been kept in a good state of repair and were in first-class, usable condition and that if plaintiff purchased said premises it would be unnecessary for him to make any alterations or repairs on said buildings or said tank and tower, but that it was then suitable for immediate use."

Reliance on the representations and their falsity are alleged. The evidence was that at one time, not definitely fixed, Fay stated the resort was constructed in 1919, whereas on the trial he admitted it was built in 1913 or 1914. This was the only definite misrepresentation. No direct statements or representations as to the water-tower or conditions of the timbers therein were testified to. The only thing was that in April, 1927, or about that time, when plaintiff spoke about what amount of money it would be necessary to set aside for repairs or putting the resort in condition for operation, Fay stated it was ready "to go," with the exception of some slight repairs on the gasolene engine and pump. It will thus be noted that the only tangible misrepresentation to go to a jury was a six years' difference in the age of the buildings and equipment, including the water-tower. Can this misrepresentation be regarded as the proximate cause of plaintiff's injuries? Or in other words, in the sale of real estate, is it reasonably to be apprehended that misrepresentations as to the age of structures thereon involves any other consequences than liability for the difference in value of the premises because not of the age represented?

Plaintiff relies on cases involving the sale of personal property warranted for safe use under certain circumstances: Cunningham v. C. R. Pease H. F. Co. 74 N. H. 435, 69 A. 120, 20 L.R.A.(N.S.) 236, 124 A. S. R. 979, explosions of blacking sold under representations that it safely could be applied on a hot stove. Sale of instrumentalities by manufacturers in which defects are concealed by paint, Schubert v. J. R. Clark Co. 49 Minn. 331, 51 N. W. 1103, 15 L. R. A. 818, 32 A. S. R. 559; Holmvik v. Parsons B. C. & S. F. Co. 98 Minn. 424, 108 N. W. 810; Krahn v. J. L. Owens Co. 125 Minn. 33, 145 N. W. 626, 51 L.R.A.(N.S.) 650. Sale of an animal with a known vicious habit without disclosing the habit, Cameron v. Mount, 86 Wis. 477, 56 N. W. 1094, 22 L. R. A. 512. These and other like cases do not furnish any aid to a decision here. Neither party cites any precedent directly in point. In the cases cited as analogous, negligence seems to be the basis of recovery; while here, evidently to escape the defenses of contributory negligence and assumption of risk, plaintiff predicates his case entirely on misrepresentations in respect to the age and freedom from decay of the structures upon the premises contracted for. But it seems to us that neither on the ground of negligence nor on misrepresentations has a case been made out.

Plaintiff saw the resort in 1925, when interested as an agent in disposing thereof. We must assume that then he made more than a cursory examination. In 1926 he operated the place personally and was on the premises for over two months nearly daily. He could not escape knowledge as to the conditions of the structures thereon. It must have been apparent that the buildings and structures on the land were not of recent construction. Everyone knows that wood and timbers are affected by decay. The timbers upon which the water-tank rested had never been painted so there was no concealment of defects. Plaintiff knew that some change was needed at the water-tank on account of settling unevenly, presumably due to uneven decay. He assisted his servant in remedying the defect. And even if he had relied on the representation as to age and that no substantial repairs were needed before opening the resort in 1927, plaintiff discovered or should have discovered when he saw

that the water-tank and its support needed repairs that decay and deterioration had affected the structure, and he could not thereafter rely on the representation as to its condition. But even were this not so, it is more likely that the collapse was due to the faulty manner in which plaintiff and Olson made the repairs than to the inherent weakness of the structure caused by age or decay; for a few months before the accident it had supported safely a load of about eight tons heavier than it carried when the collapse occurred. At any rate, it is left in the realm of conjecture whether the accident was caused by faulty underpinning of the raised legs, or by reason of age or decay of the supporting timbers.

We also are of the opinion that the theory upon which a recovery of damages is here sought is an attempt to extend the fertile field of personal injury actions beyond what heretofore has been considered the extreme limit. The general rule is that a vendor is not liable to his vendee or members of the vendee's family for defects in the premises into the possession of which the vendee has been let. Palmore v. Morris, Tasker & Co. 182 Pa. 82, 37 A. 995, 61 A. S. R. 693; Smith v. Tucker, 151 Tenn. 347, 270 S. W. 66, annotated in 41 A. L. R. 830. And again, damages with reference to misrepresentations in the sale of real estate (this option was on real estate and the structures thereon) are ordinarily limited to the amount the value of the premises are diminished by the misrepresentation or deceit. In the sale of real estate neither vendor nor vendee can reasonably anticipate that the consequences of any misrepresentation should go further and include responsibility for injuries to occupants, perhaps years after possession is taken, through a giving way of a structure on the premises because of its age or state of repair and as to which there had been misrepresentations by the vendor when the purchase was made. Damages so claimed appear too remote and not within the contemplation of the parties to a real estate transaction.

The order is affirmed.