### RACHLIN v. LIBBY–OWENS–FORD GLASS CO.
### No. 220.

Circuit Court of Appeals, Second Circuit.
May 2, 1938.

Garfield & Seligson, of New York City (Gustave B. Garfield, of New York City, of counsel), for appellant.

John P. Smith, of New York City (Thomas F. Keane, of New York City, of counsel), for appellee.

Before L. HAND, SWAN, and CHASE, Circuit Judges.

SWAN, Circuit Judge.

In January, 1934, Mrs. Rachlin, the plaintiff, purchased a new Buick automobile from a Buick dealer in New Jersey. She paid the dealer $10 more than the regular price in order to have the windshield and deflectors equipped with "safety glass" manufactured by the defendant, insisting upon this because she had read advertisements which the defendant had caused to be published in a weekly magazine. In December, 1934, while Mrs. Rachlin's Buick was proceeding along a public highway in Virginia, it was run into by a car that was speeding in the opposite direction and out of control. The blow was severe as evidenced by photographs of the damaged Buick and by the fact that the estimated cost of repairing it exceeded $900. At the time of the collision Mrs. Rachlin was sitting on the front seat beside her husband, who was driving, and she sustained serious cuts from flying fragments of the windshield. To recover damages for the injuries so sustained she brought this action against the manufacturer of the "safety glass." The first count was framed as an action for fraud and deceit, the second as an action for breach of warranty. On the fraud count the court directed a verdict for the defendant at the close of the evidence; it dismissed the warranty count. The appellant assigns errors to both rulings.

The first count of the complaint alleged that the defendant by its advertisements falsely and fraudulently represented "that persons riding in automobiles equipped with 'safety glass' would thereby achieve freedom or exemption from injury from broken glass; that if 'safety glass' broke through impact, accident or otherwise, pieces thereof would not fly through the air in jagged or razor-edged chunks or in sharp and dangerous pieces which were liable to cut and leave humiliating scars, and otherwise cause personal injury." The proof fell short of sustaining these allegations. The advertisements [1] do not state that automobiles equipped with safety glass provide "freedom or

---

[1] The two advertisements do not differ materially. It will suffice to set out one of them.

"Stop That Man

"He Forgot His Family

"Bought a new car. Safety Glass in the windshield. That was standard equipment. But not in the windows. He didn't Tell the Salesman that he wanted it. He was thoughtless. Reckless of consequences. Forgot that the family rides in back. Surrounded by glass. Doors. Side windows. Rear window. Ordinary glass. The kind that breaks in-

to jagged, dangerous, razor-edged chunks that fly through the air. He forgot that. It was a serious oversight. It makes him a reckless driver. Cuts. Scars. Almost anything might happen. Too bad, when he could have had L.O.F. super Safety Glass All-Around—the greatest available protection against all that—for less than $1.50 more on each of 12 monthly payments, if ordered when the car is ordered. Anyone Buying a New Car without Making Sure It Has Safety Glass All-Around Is a Reckless Driver.

"Packard, Studebaker, Franklin, Reo-

exemption from injury from broken glass," nor do they state that under no circumstances will sharp and dangerous pieces fly through the air, if the glass is broken. They state the dangers of ordinary glass which, if it breaks, scatters jagged chunks and sharp, dangerous pieces, liable to cut and leave scars, and they assert that safety glass in the windshield is standard equipment, that such glass "all-around" provides "the greatest available protection against all that," and that it is reckless not to make sure that a new car is equipped with safety glass "all-around"; that is, in windows as well as windshield. The essential idea conveyed by the advertisements is that safety glass furnishes "the greatest available protection" against injury from flying fragments of glass and that a purchaser who is not reckless will have his car so equipped throughout. No fair reading of the language can construe it as representing that safety glass is unbreakable or that no possible type of collision can cause it to fly about in dangerous fragments. Despite Mrs. Rachlin's testimony that the words "safety glass" conveyed to her mind the impression that "I would be safe and free from harm from flying glass," the court could not have permitted the jury to find that the defendant had made such a representation.

 The proof established that safety glass is not unbreakable but will withstand without shattering a much heavier blow than ordinary plate glass; and that the defendant's product was as good as that of any other manufacturer. Nor was there any evidence that the safety glass installed in Mrs. Rachlin's car was defective in any respect. This proof was in no sense contradicted by the fact that the ordinary glass in the side windows and rear window was not broken by the collision, for these windows were subject to very different strains and stresses than the windshield. The plaintiff attempted to prove that the representation that safety glass was "the greatest available protection" was false, and known by the defendant to be false, because its expert chemist knew of bullet-proof glass and testified that he "guessed" it was a greater protection against breakage than what is called safety glass. But bullet-proof glass was described as more than an inch in thickness. There was no evidence that glass of such thickness could be substituted in the windows and windshield of a car equipped with ordinary glass. We think it is common knowledge that the ordinary automobile provides insufficient space within the window frames for bullet-proof glass. Obviously, the advertisements referred to the greatest protection available by substituting a safety glass that could be installed without remodeling the body of the car. Hence we conclude that there was no evidence on which the jury could have found false and fraudulent representations by the defendant.

 But, even if it be assumed that the defendant consciously misrepresented facts in asserting that its safety glass was the best available protection against flying fragments, the court was right in directing a verdict on the first count. The measure of the plaintiff's damages would be the loss due to her reliance upon the misrepresentations. There was no proximate causal relation between the deceit and the injuries she sustained. To establish such a causal relation she would have had to show that reliance upon the defendant's misrepresentations prevented her from taking other and more efficacious measures for her safety, or was the inducing cause of her being in the car at the time of the accident. See Williams v. Detroit Oil & Cotton Co., 52 Tex. Civ.App. 243, 114 S.W. 167, affirmed 103 Tex. 75, 123 S.W. 405; Rehg v. Vermillion Boat & Outing Co., 181 Minn. 92, 231 N.W. 611. The plaintiff relies upon the well-known case of Levy v. Langridge, 4 M. & W. 337, for the principle that a fraudulent statement as to the quality of an article may render the defendant liable for personal injuries sustained by the plaintiff while using the article in the belief that it was as represented. There a gun was sold to a pur-

Royale Custom Models, Ford DeLuxe Models, Cadillac, LaSalle, Lincoln, Buick 80 and 90, all use L-O-F super Safety Glass All-Around and do not make an extra charge for it. Many other cars provide it free in windshields and in ventilators, when ventilators are standard equipment, but make a slight extra charge for it in windows. To be sure you get it All-Around you must ask the salesman when you buy the car.

"Libby-Owens-Ford Glass Company, Toledo, Ohio

"Look here. The 'Where to Buy It' section of your 'phone book. Ask the L.O.F. Distributor the nearest place to have super Safety Glass specially fitted to your present car. You need it All-Around. 'Right now. For your family's sake."

chaser on the representation that it was made by a special armorer and was safe to use, when the seller knew that it was an inferior gun and unsafe. It exploded, injuring the plaintiff's hand, and for such injuries he was allowed. to recover in an action for deceit. The court said that the damage resulted from the fraud, "not from an act remote and consequential, but one contemplated at the time as one of its results." There the gun would not have been used but for the seller's misrepresentation; but in the case at bar there is nothing to suggest that, if there had been no advertisement by the defendant, Mrs. Rachlin would not have bought the car or taken the trip South. She meant to buy a new car and she would have taken it where she did whether or not its windshield was equipped with safety glass. Her danger was not increased by her reliance upon the defendant's representations as to the quality of the article she bought. Her injuries were only a remote result of the contemplated use of the defendant's glass; the proximate cause was the collision, and with that. the defendant had no connection. Hence, her only loss due to reliance on the defendant's representations was the $10 paid for the extra equipment, and this was not the damage for which she sued.

The second count of the complaint pleaded as warranties, "to the public in general and to the plaintiff in particular," the same representations that we have already set out in discussing the fraud count. It was further alleged that the defendant had engaged in an extensive advertising campaign intended to cause prospective purchasers of automobiles to purchase from dealers the defendant's safety glass and that the plaintiff was influenced by the advertisements to do so. This count the District Court dismissed on the authority of Chanin v. Chevrolet Motor Company, 7 Cir., 89 F.2d 889, 111 A.L.R. 1235, and Turner v. Edison Storage Battery Co., 248 N.Y. 73, 161 N.E. 423. That the orthodox rule requires privity of contract between the parties in an action for breach of warranty is too well known to require the citation of authorities. Several courts, however, have recognized an exception to the general doctrine in the case of medicines and foodstuffs, and have held a manufacturer to warrant to the ultimate consumer that the article is fit for human consumption. See Chanin v. Chevrolet Motor Co., 7 Cir., 89 F.2d 889, 890, 111 A.L.R. 1235, footnote 1. The plaintiff would have us extend the exception to include other kinds of chattels when a manufacturer by an extensive advertising campaign directs his representations to the ultimate consumer and invites him to purchase the manufacturer's product from a retail dealer. Such an extension was apparently recognized in Baxter v. Ford Motor Co., 168 Wash. 456, 12 P.2d 409, 15 P.2d 1118, 88 A.L.R. 521, and has been favorably commented upon in some of the law magazines. See 46 Harv.L.Rev. 161; 18 Cornell L.Q. 445. But we are to apply the local law which is the law of New Jersey since the purchase was apparently made there. See Erie Railroad Co. v. Tompkins, 58 S.Ct. 817, 82 L.Ed. ——, handed down by the Supreme Court April 25, 1938. The briefs do not suggest that New Jersey law differs from that of New York, under which the action will not lie. Turner v. Edison Storage Battery Co., 248 N.Y. 73, 161 N.E. 423. But, even if the New Jersey law were the same as the rule of the Baxter Case, the result would be no different in the case at bar, since we find no evidence that the defendant's product did not conform to its representations.

The warranty alleged was that the plaintiff would obtain "exemption from injury from broken glass" and, if the glass broke, "pieces thereof would not fly through the air in jagged razor-edged chunks." But as already demonstrated under the fraud count, the advertisements contained no such representations. As there explained, the representation went no further than to assert that safety glass was a greater protection than ordinary glass and that to install safety glass "all around" provided "the greatest available protection" against jagged chunks and flying fragments. Since bullet-proof glass was not practically "available" for a car of ordinary model of body, there was no evidence that the defendant's glass was not the greatest available protection against flying fragments. Therefore, there was no error in dismissing the warranty count.

Judgment affirmed.