**ATCHISON, TOPEKA & SANTA FE RY. CO. v. HAMILTON BROS., Inc. et al.**

No. 14397.

United States Court of Appeals Eighth Circuit.

Dec. 4, 1951.

Rehearing Denied Dec. 31, 1951.

Donald H. Sharp, Kansas City, Mo. (John H. Lathrop, Sam D. Parker, and James F. Walsh, all of Kansas City, Mo., on the brief), for appellant.

Albert Thomson, Kansas City, Mo. (Johnson, Davis, Thomson, Van Dyke & Fairchild, Kansas City, Mo., on the brief), for appellees.

Before SANBORN, THOMAS and COLLET, Circuit Judges.

THOMAS, Circuit Judge.

This is an appeal by the defendant in the district court from a judgment for damages entered upon the verdict of a jury.

The plaintiffs and the interveners are the owners and their tenants of farm lands situated in the Henrietta Drainage District in Ray County, Missouri. The district is drained by Willow Creek which flows across the defendant's right of way and empties into the Missouri river about three or four miles distant.

The plaintiffs and the interveners all allege in their petitions that the defendant has violated § 5222 of the Revised Statutes of Missouri, 1939, V.A.M.S. § 389.660, which in pertinent part provides: "It shall be the duty of every corporation * * * operating any railroad * * * to cause to be constructed and maintained suitable openings across and through the right of way and roadbed of such railroad * * * so as to afford sufficient outlet to drain and carry off the' water, including [any] surface water * * * whenever the draining of such water has been obstructed or rendered necessary by the construction of such railroad * * * and any corporation, company or person failing to comply with the provisions of this section shall * * * be liable for all damages done by said neglect of duty, and each neglect of duty shall be a separate offense."

And it is alleged that the negligent violation of the statute by the defendant in June and July, 1949, caused the surface water, the water flowing in Willow Creek, and other water to be impounded on, to overflow, to wash out the levees, and to flood the lands owned and leased by the plaintiffs, resulting in the damages complained of.

The alleged negligent acts complained of are:

(a) That the defendant negligently and unlawfully constructed and so modified its bridge over Willow Creek that the piling and joists supporting the bridge were set at such an angle and so close to each other that (1) the water flowing in Willow Creek was partially blocked; (2) was prevented from scouring out the channel; and (3) that as a result brush and other debris lodged in the piling obstructing the flow.

(b) That prior to and during 1949 the defendant constantly dumped a thick mixture of soda ash in the creek adjacent to and under the bridge which further obstructed the flow of water under it, resulting in the damages complained of.

As owner of 100 acres planted in alfalfa Buford G. Hamilton and Cleo B. Hamilton demanded damages for one-half the value thereof, or $1,934, and for $3,000 for damages to 20 acres by sand thrown thereon by the flood. Hamilton Brothers, Inc., as tenants, demanded damages for one-half the loss of the same alfalfa, or $1,934.

Thomas Fowler as owner of 150 acres of growing corn valued at $8,670 demanded damages for two-thirds thereof, or $5,780; and Troy Lynn as tenant asked for one-third, or $2,890. All plaintiffs and interveners demanded interest and costs.

For its answer to the claims of plaintiffs and interveners defendant—

1. Alleges that the complaints fail to state claims upon which relief can be granted;

2. Denies all charges of negligence; and

3. Says that if plaintiffs have sustained the damages from floods claimed, such floods and damages were caused by the acts of the Henrietta Drainage District in

changing the natural drainage of water from their property and in its failure properly to maintain the artificial levees, drains and ditches constructed by the district.

The jury returned a verdict in favor of Hamilton Brothers, Inc., for $773.60; in favor of Buford G. Hamilton and Cleo B. Hamilton for $773.60; in favor of Thomas Fowler for $2,312, and in favor of Troy Lynn for $1,156, for which amounts together with costs judgment was entered.

On appeal the defendant contends that the court erred: 1. In denying its motion for a directed verdict because plaintiffs failed to make a submissible case; 2. In admitting evidence of the flooding of plaintiffs' crops in 1947; and 3. In admitting in evidence plaintiffs' Exhibit 19.

The Henrietta Drainage District lies west of the town of Henrietta and consists of bottom land subject to overflow from Willow Creek and the Missouri river. It is bounded on the south by the embankment of the defendant railway. Willow Creek enters the district at the northwest corner and flows south and southeast. Near the eastern boundary of the district it turns south and passes under the defendant's railroad bridge at the southeast corner of the district.

Willow Creek carries silt from the hills at the north which filled up the natural channel and permitted the growth of weeds, trees and willows. In 1945 and 1946 the district excavated a new channel across the district from west to east a quarter of a mile north of the old channel. The earth excavated to make the new channel was used to construct levees on each side of the ditch for the purpose of confining the water within the channel. This new channel and the flanking levees were constructed on a right of way 200 feet wide, except at the bend about a quarter of a mile upstream north of the bridge where the levee on the north bank ended, at which point the channel was 400 feet wide.

The levee on the north bank of the new channel extends from the northwest corner of the district to high ground at the eastern boundary of the district about a quarter of a mile north or upstream from the bridge, while the levee on the right or south bank extends to the railway embankment immediately west of the bridge at the southeast corner of the district. Along the north side of the railroad embankment the defendant maintains a lateral which connects with Willow Creek by three gated pipes installed by the drainage district and extending through the levee immediately upstream from the point where the levee connects with the railroad embankment. A similar gated pipe through the left bank levee connects a lateral ditch with the creek channel a quarter of a mile upstream from the bridge. All such pipes were equipped with flap gates within the creek so designed that when the water outside the channel was higher than the water in the channel the gates would open and permit the water outside the levee to flow through into the creek; but, if the water in the creek were as high or higher than the water outside the bank or levee the water could not flow through and into the creek.

The plaintiffs' lands involved in this case lie south of the new channel of Willow Creek and north and west of the railroad embankment.

The defendant operated a water treating plant at Henrietta where the water used in its locomotives was treated with soda ash. Once each day the soda ash not taken up by the water was sludged into Willow Creek upstream from the bridge. Plaintiffs testified that this sludge solidified to some extent and caused the silting up of the stream and some filling up of the channel immediately above the bridge.

After the new channel had been completed in December, 1946, it was not kept clean. At a point about a quarter of a mile upstream above defendant's bridge a thick growth of willows and trees choked up the channel and inhibited the free flow of water.

In May, 1949, the defendant had begun work on the construction of a new bridge over Willow Creek. There were two tracks crossing the creek. The old bridge was a trestle resting on piles driven into the bed of the creek. The piling were in rows about a foot apart and the distance between the rows was 13 feet. The rows of piling under the northwesterly track

stood at right angles to the creek while those supporting the southerly track crossed the creek diagonally.

On May 20–21, 1949, one and three-eighths inches of rain fell, resulting in damage to 25 acres of the Fowler and Lynn corn. The levee did not break, however, nor did Willow Creek overflow.

On the night of May 30–June 1, another heavy rain fell, and sometime before five a. m. on June 1st the water in Willow Creek breached the south levee of the new or diversion channel of the creek at a point about one mile above defendant's bridge and upstream from the point where the channel was filled with willows and other vegetation. At another point above the willows in the channel and three-quarters of a mile above the bridge, Willow Creek overflowed the south bank or levee. The rain which fell upon plaintiffs' alfalfa and corn combined with the water which escaped from the creek at the two points described caused the damage to the plaintiffs' crops sought to be recovered in this suit.

The plaintiffs contend that the break in the levee and the overflow causing the damage to their crops was the result of the negligence of the defendant in that the piling supporting the bridge caught the brush and debris flowing down the stream and formed a dam which backed the water up in the creek until it overran the levee. The defendant contends that the bridge did not cause the overflow but that it was the result of the failure of the drainage district to keep the channel clear of willows and weeds upstream above the bridge.

Defendant's first contention is that the court erred in denying its motion for a directed verdict because (a) the undisputed evidence shows that the bridge in question was suitable and sufficient within the meaning of the statute; (b) there is no substantial evidence that the defendant proximately caused the plaintiffs' crops to be flooded; and (c) there is no substantial evidence of any proper measure of damages.

■■ It is admitted that under § 5222 of the Revised Statutes of Missouri, 1939, supra, where a railroad crosses a water course flanked by levees as in this case the railroad must provide a bridge sufficient to accommodate all the water flowing between the flanking levees. Smithpeter v. Wabash R. Co., 360 Mo. 835, 231 S.W.2d 135, 19 A.L.R.2d 950. It is also true that on appeal from a judgment based upon a verdict of a jury the appellate court must consider the evidence in the most favorable light in support of the verdict. Jones v. Chicago, B. & Q. R. Co., 343 Mo. 1104, 125 S.W.2d 5.

The testimony disclosed that the levee was broken and overtopped only at the two points above described, and the flood water which caused the damage to plaintiffs' crops all came through these two openings. While these breaches in the levee occurred sometime before five o'clock on the morning of June 1st, the water in the creek did not reach its crest until about noon of that day. The high watermark on the levee near the upper break was found to be 698.3 feet above sea level. The high watermark immediately down stream below the willows was 692.1 feet above sea level. At the bridge the bottom of the stringers or joists was 696.3 feet above sea level, and the high watermark there was 692.4 feet above sea level. The low point of the levee at the bridge was 696 to 698 feet above sea level. One witness for the plaintiffs testified that sometime in June he observed a high watermark on the stringers at the bridge. He did not state the date in June on which he made his observation. Thus it is undisputed that the water at no time during the flood reached the top of the levee between the bridge and the point where the willows covered the bottom of the stream.

The vital contention of plaintiffs in regard to the proximate cause of the break in the levee and the overtopping of the levee at another point permitting the flood water to overflow and damage the plaintiffs' crops is based upon the expert testimony of E. I. Myers, the civil engineer who designed and supervised the construction of the new or diversion channel for Willow Creek in 1946. He testified that some three or four weeks after the flood of June 1, 1949, he inspected the diversion channel, at which time he observed the drift that had been removed from the stream at the bridge and the wil-

lows in the channel above the bridge. He further testified: "I don't think there is any doubt that the bridges as they existed in 1949, would catch the debris which came down Willow Creek * * * Even a broomstick is in some degree an obstruction of the water flow * * * The willows in the channel a quarter of a mile upstream from the railroad would have a tendency to retard the flow of water and cause the water upstream to be higher. The water upstream from the willows would be higher for the reason of the retardation effect of the willows. The willows and the brush and the debris would cause the water upstream to rise to a much higher elevation than it otherwise would if the willows were not in the channel.

"The water level was backed higher by reason of its inability to get under the railroad tracks and the water was deeper than it would have been had it had a free outlet * * *.

"The back water, that is the flat surface back water, in my opinion, would not reach as far as the break. The head water discharge on top of the back water would create some additional increase in height. An elevation of 692 or 693 feet at the bridge would have some back water effect upstream for some distance. 694 at the bridge will not create water high enough as back water, but head water coming in and discharging on that back water will be in excess of 694. I haven't made any computation and don't know how far back that will carry.

"Q. Is it your opinion, Mr. Myers, that the elevation of the water down at the railroad bridge caused the water a half mile or so upstream to overflow the levee? Is that your testimony? A. I think the inability of the water to get out freely had a contributory effect, yes. I don't say that it did it, no. I say that it only contributed to it. "Q. And what about the willows and the debris in the bend? Did that contribute to it? A. I think that contributed to it too, yes."

The defendant in argument emphasizes the fact that the flood water did not overtop the levee at the bridge, although the low point of the levee at that place was 696 feet and the bottom of the joists or stringers at the bridge was 696.3 feet; that the high watermark at the break in the levee about a mile upstream was 698.3 feet, whereas the high watermark immediately downstream below the willows was 692.1 feet, or a difference of more than six feet. These facts, it is argued, demonstrate two things: first, that the bridge complied with the requirements of the statute; and, second, that the difference of six feet between the height of the surface of the water above and below the willows logically refutes the engineer Myers' theory that the retardation of the flow of the water under the bridge by the trash lodged against the piling contributed to the overflow of the water at the break in the levee or at the point of overflow.

█ The evidence, we think, fails to show that the acts complained of were the proximate cause of the break and overflow of the levee which caused the damage to plaintiffs' crops. The definition of proximate cause is well settled in Missouri. In Kennedy v. Independent Quarry & Construction Co., 316 Mo. 782, 291 S.W. 475, 481, it is said: "The proximate cause of an event is that which, in a natural and continuous sequence, unbroken by any new cause, produces the event and without which the event would not have occurred." See, also, Evans v. Massman Const. Co., 343 Mo. 632, 122 S.W.2d 924, 932.

The plaintiffs rely upon the rule that "If the defendant's negligence concurred with that of another or with the act of God and became a part of the direct and proximate cause of the injury, although not the sole cause, the defendant is still liable." Ford v. Wabash Ry. Co., 318 Mo. 723, 300 S.W. 769, 773; State v. Haid, 325 Mo. 107, 28 S.W.2d 97. Under these decisions a defendant is liable, although his negligence without such other independent intervening cause would not have produced the injury.

█ But the rule thus relied upon by plaintiffs is not a complete statement of the law of Missouri relevant to the record here. In Evans v. Massman Const. Co. supra, the Supreme Court of Missouri quotes as a correct statement that "The rule is elemental that the burden remains with plaintiff to the end of the case to establish by proof,

not only the fact of the negligence averred, but also to show a direct connection between such negligence and the injury. Where the ultimate fact is not susceptible of direct proof, its existence must directly follow as a reasonable conclusion from its basic facts and circumstances, and it may be stated as an axiomatic rule that whenever court or jury are left by the evidence in a situation where, in order to find the ultimate fact alleged, they must piece out the facts adduced with conjecture or supposition, the plaintiff must be held to have failed in his proof." Coble v. St. Louis-San Francisco Ry. Co., Mo.Sup., 38 S.W.2d 1031, 1036. And in Warner v. St. Louis & M. R. R. Co., 178 Mo. 125, 134, 77 S.W. 67, 70, the Court said: "If the injury may have resulted from one of two causes, for one of which, and not the other, the defendant is liable, the plaintiff must show with reasonable certainty that the cause for which the defendant is liable produced the result; and, if the evidence leaves it to conjecture, the plaintiff must fail in his action."

These rules are applicable here. In view of the facts that the levee was neither broken nor overtopped below the willows and that the level of the high water below the willows was six feet lower that it was at the break in the levee above them, it is scarcely possible even to conjecture that the bridge contributed to the breaking and overflow of the levee upstream from the willows. It seems impossible that if he knew these facts the engineer Myers could have reached the conclusion that the retardation of the water at the bridge contributed to the overflow. It appears to be impossible that the sole proximate cause of the overflow was caused by anything other than the willows.

■■ The statute relied upon does not require the railroad to keep the stream above the bridge in repair nor make it responsible for floods caused by the negligence of the drainage district. It is elementary law that no one is bound to anticipate the negligence of another. The statement of the Supreme Court of Missouri in Evans v. Massman Constr. Co., supra [343 Mo. 632, 122 S.W.2d 936], is applicable here: "Evidence no stronger than this record discloses is not sufficient in law to take the case to the jury and a jury's verdict on such evidence is nothing more than a speculation as to the cause of the damage." The substantial evidence here would not support a finding that the break in and the overtopping of the levee might not have occurred had defendant's bridge not existed. See Simon v. Terminal R. Ass'n of St. Louis, Mo.App., 237 S.W.2d 244.

■ In Elzig v. Gudwangen, 8 Cir., 91 F.2d 434, 440, this court said: "The rule that oral evidence which is opposed to undisputed physical facts is not substantial evidence * * * is well settled." Citing authorities. And "Where it clearly appears that an expert's opinion is opposed to physical facts * * * or is pure speculation, such an opinion will not be regarded as substantial evidence." Svenson et al. v. Mutual Life Ins. Co., 8 Cir., 87 F.2d 441, 445.

■ In view of the undisputed physical facts in evidence in this case it is clear that the opinion of the expert Myers that defendant's bridge contributed to the break in and the overflow of the levee was pure speculation. The defendant's motion for a directed verdict in these circumstances should have been sustained.

The judgment of the district court is accordingly reversed and the case is remanded with directions to enter judgment for the defendant.

Reversed.