John L. WRIGHT and Stella H. Wright,
Plaintiffs,

v.

The ATCHISON, TOPEKA AND SANTA
FE RAILWAY COMPANY,
Defendant.

Rolland B. MIDDLEKAUFF and Mildred
P. Middlekauff, Plaintiffs,

v.

The ATCHISON, TOPEKA AND SANTA
FE RAILWAY COMPANY,
Defendant.

George LETZIG and Rachel Letzig,
Plaintiffs,

v.

The ATCHISON, TOPEKA AND SANTA
FE RAILWAY COMPANY,
Defendant.

Nos. 15161–15163.

United States District Court
W. D. Missouri, W. D.

April 21, 1966.

Linde, Thomson, Van Dyke, Fairchild & Langworthy, Albert Thomson, Kansas City, Mo., for plaintiffs.

Lathrop, Righter, Gordon & Parker, Jack Headley, Kansas City, Mo., for defendant.

JOHN W. OLIVER, District Judge.

These consolidated cases pend on the following timely filed post-trial motions:

    1. Plaintiffs' motion for partial new trial on the sole issue of damages; and

    2. Defendant's motion for judgment notwithstanding the verdict.

For the reasons we shall state in some detail, plaintiffs' motion will be denied; defendant's motion will be granted; and, consistent with the rationale of Montgomery Ward & Co. v. Duncan, 311 U.S. 243, 61 S.Ct. 189, 85 L.Ed. 147 (1940), and the 1963 Amendments to Rule 50 of the Rules of Civil Procedure, we indicate that if the judgment entered pursuant to defendant's motion is vacated or reversed by the Court of Appeals, in that event, but only in that event, a new trial should be granted.

Our basic determination that defendant's motion should be granted makes detailed discussion of plaintiffs' motion redundant. A plaintiff who has failed to prove his right to any damages is obviously not entitled to a new trial on the issue of damage alone, regardless of how inadequate the verdict may have been.

Defendant's motion for judgment notwithstanding the verdict must be ruled in accordance with well established legal principles. The fact that we sent these cases to the jury is immaterial. The practice of sending doubtful cases to the jury is commended in Green v. Reynolds Metals Company, 5 Cir. 1964, 328 F.2d 372.[1]

Montgomery Ward & Co. v. Duncan, supra, 311 U.S. at 251, 61 S.Ct. at 194, teaches that "[t]he motion for judgment cannot be granted unless, as a matter of law, the opponent of the movant failed to make a case and, therefore, a verdict in movant's favor should have been directed." Judge Blackmun's statement of the applicable rules in Hanson v. Ford Motor Company, 8 Cir. 1960, 278 F.2d 586, 596, is frequently quoted in the Eighth Circuit. He there stated:

    [T]he established rule that in passing upon the motion for judgment, the trial court and this court are (1) to consider the evidence in the light most favorable to the plaintiffs as the parties prevailing with the jury; (2) to assume that all conflicts in the evidence were resolved by the jury in favor of the plaintiffs; (3) to assume as proved all facts which plaintiffs' evidence tends to prove; (4) to give the

---

1. In footnote 2 on page 373 of 328 F.2d, Judge Johnson in *Green* noted that "[t]he practice followed by Judge Grooms in this case, of submitting the case to the jury for a verdict even though the evidence appears insufficient, is a highly desirable practice in that it makes certain that the final determination of the case is expedited even though a judgment is entered notwithstanding the jury verdict."

It has been our experience in consistently following this practice that in all but exceptional instances, the jury usually returns a verdict for the defendant. Apart from the practical and definite resolution of all legal questions relating to the sufficiency of the evidence, we have the feeling that plaintiffs feel better about being defeated by a jury rather than a judge. The cases at bar obviously reflect the exceptional situation in which verdicts for the defendant were not returned and the reserved questions of law must therefore be decided on motion n. o. v.

plaintiffs the benefit of all favorable inferences which may reasonably be drawn from the facts proved; and (5) to deny the motion if, reviewing the evidence in this light, reasonable men could differ as to the conclusions to be drawn from it.

See also Minnesota Mutual Life Insurance Company v. Wright, 8 Cir. 1963, 312 F.2d 655 at 657, and Security Benefit Life Insurance Company v. Jackson, 8 Cir. 1963, 318 F.2d 846, at 849, for further examples of the application of the rule as stated by the Eighth Circuit. In the former case, the District Court's denial of a n. o. v. motion was affirmed; in the latter, the District Court's denial was reversed. Kotula v. Ford Motor Company, 8 Cir. 1964, 338 F.2d 732, is the latest Eighth Circuit case. It affirmed the District Court's granting of a motion for judgment notwithstanding the verdict.

Defendant's suggestions in support of its motion again focus attention on whether plaintiffs' expert witness Benberg was a qualified witness, whether his expressed opinions were based on adequate data, and whether there was a failure of proof under any and all circumstances in regard to proximate cause, and the undisputed evidence as to the actual cause of plaintiffs' flood damage.

From the time of the pretrial conferences, both sides recognized that each would be required to rely upon the testimony of their respective experts in order to adduce sufficient evidence to establish their respective claims and defenses. But from that time to this plaintiffs have attempted to ignore the fact that so far as the trial of these cases in this Court was concerned, the qualifications and preparation of plaintiffs' witness Benberg would be placed in issue.

The problems presented by witness Benberg were accentuated by plaintiffs' election to read the testimony given by witness Benberg at the earlier State court trial rather than subject that witness to further voir dire examination, and, if found to be qualified, to further cross-examination in this Court. And this was done in obvious disregard of the fact that plaintiffs' trial theory in the State court cases was a different theory than their trial theory in this Court. The main thrust of plaintiffs' State court trial theory was defendant's alleged failure to have made openings in its embankment (see pages 233–4, 235 and 239 of State court transcript read in evidence). Both the State court and this Court ruled against plaintiffs as a matter of law in regard to that trial theory.

The parties will recall that on the first day of trial we excused the jury until 1:30 p.m. immediately after it was empaneled and that we spent the rest of the morning in informal conference organizing the exhibits and discussing the expert testimony that would be introduced by both sides.

On the afternoon of the first day of the trial when plaintiffs announced for the record that they were going to read the State court testimony of witness Benberg, the following colloquy took place in regard to defendant's objecion to plaintiffs' proposed method of adducing their expert evidence:

MR. HEADLEY: Now, I want to state our objection. * * * At this time the defendant objects to the reading of the testimony of Mr. Benberg as an expert supposedly in this field * * * for the basic reason that Mr. Benberg isn't qualified, and is not a hydraulics engineer. The testimony in this transcript clearly shows that. In addition this is shown in the testimony of Mr. Benberg in his deposition taken in this cause on April 20, 1965, which is in the court file in this case. * * * We are now objecting to the qualifications of plaintiffs' expert. I can point out specific pages references to your Honor——

THE COURT: These are the same ones that we went over in the informal conference?

MR. HEADLEY: We went over it this morning at length, page by page

[this was a reference to the informal conference after the jury was empaneled which was not reported].

After making inquiry as to whether witness Benberg's qualifications had been contested in the State court trial, we stated:

THE COURT: * * * I am going to permit the evidence at the State trial to be read, although I want to state for the record what I stated off the record, that the Court felt that the testimony of Mr. Benberg it had read in the deposition, which is a part of the Court's file, raised the question in the Court's mind as to the qualifications of this witness, and that I advised counsel for the plaintiffs that such a question was in my mind; that the question related directly to the sufficiency of the evidence to support any verdict that might be had in this case for the plaintiffs.

I called particular attention to the case of Atchison, Topeka and Santa Fe [R. Co.] v. Hamilton Brothers [8 Cir.], reported in 192 F.2d 817, not for the purpose of recalling painful memories to present counsel for the plaintiffs, but to suggest that a similar question might be involved in this case. I afforded counsel for the plaintiffs an opportunity after we picked the jury this morning to regroup and advance to the rear temporarily.

Counsel indicated that he was satisfied that the qualifications of Mr. Benberg did appear sufficiently from the transcript in the State Court. Now, I make that statement only to have of record the question that is in my mind and to indicate that I advised counsel for both sides that such question had been raised by the deposition which I read in preparing for the trial of this case, but I think under all the circumstances that I am going to permit the testimony to be read, and I want the record to be very clear that in the event there is a verdict for the plaintiff, I will permit counsel for the defense to raise the question as to the qualifications of this witness and to permit both parties to brief that question thoroughly in the event it becomes a live question after verdict.[2]

At the close of the reading of witness Benberg's State court testimony, defendant moved to strike, first "on the grounds that it is not probative, it clearly shows it is not based on any scientific inquiry or any study or any calculation, constitutes nothing more than guess and speculation and is not substantive evidence from an expert determinative of the issues in this case; his statements were simply conclusions based on nothing of substance"; and secondly, for the reason that the testimony itself "clearly shows that he is not experienced in the hydraulics field, hasn't figured bridge capacities, and has had no background which would make him even capable of figuring it had he done it, which the evidence shows he didn't do, anyway, and not qualified to express an opinion."

We reserved our ruling by stating:

THE COURT: The Court will take what is equivalent to a motion to strike the testimony of witness Benberg and make the same ruling as I made in connection with the initial objection made to his testimony as it appeared in State court. The record will show the objection before and the motion to strike following, and the same ruling is indicated at this time.

2. Plaintiffs were, of course, by our Local Rules afforded the opportunity to brief the question of witness Benberg's qualifications by responding to defendant's suggestions in support of its n. o. v. motion where defendants fully briefed that question. Plaintiffs, however, have not favored us with any brief in opposition to defendant's suggestions so that we do not know on what theory plaintiffs would seek to sustain our trial ruling that permitted them to read witness Benberg's State court testimony in evidence in these cases. Independent research does not reveal that any tenable theory exists.

At the close of the second day of the trial, and after plaintiffs had rested, we reviewed at length and in infinite detail our view of the controlling State law as stated in the many State and Federal cases to which we directed the attention of counsel. At the close of that discussion we added:

THE COURT: There are still very, very live questions in this case as to whether the plaintiff has produced any competent expert testimony whatever on the basis both of the education and experience of this witness and upon the adequacy of the study that this witness has made of this situation.

There are several rules that are obviously applicable, namely a witness may not qualify himself by his testimony that 'I am an expert'. There is also involved the operation of another well established rule that an expert's opinion testimony is only as good as the factual base upon which it rests. Whether or not in this case the statements of the witness himself have been so clear that he has not made an adequate study of factors which he concedes to be of importance in making, in forming, the opinion that he expressed. Those are live questions.

When we initially denied defendant's motion for directed verdict at the close of plaintiffs' case we expressly stated of record that "the introduction of evidence by the defense does not, under Rule 50, constitute any waiver of the legal questions raised" by that motion. And when we denied defendant's motion for directed verdict at the close of all the evidence we again directed attention to the protective features of Rule 50. Consistent with our usual practice as outlined in footnote 1, stated then that the case would be sent to the jury because "we are much too close to the far shore not to go ahead." [3]

The rendition of a verdict for plaintiffs requires that the long postponed questions raised by defendant's motions to strike witness Benberg's testimony and for directed verdict be now determined. Those motions present questions in addition to the question presented in Atchison, Topeka & Santa Fe Ry. Co. v. Hamilton Bros., 8 Cir. 1951, 192 F.2d 817. In *Hamilton Bros.*, plaintiffs' expert witness was the civil engineer who had designed and supervised the construction of the channel for Willow Creek. He obviously was a qualified witness.

The Court of Appeals was therefore immediately reached on the question of whether the opinion testimony given by a qualified expert was based upon an adequate enough factual base to show that defendant's acts were the proximate cause of plaintiffs' crop damage. *Hamilton Bros.* held that the defendant's motions for directed verdict should have been sustained because under "the undisputed physical facts in evidence * * * the opinion of the expert Myers that defendant's bridge contributed to the break in and the overflow of the levee was pure speculation" (192 F.2d at 822).

As we shall later hold, the same question presented in this case must be ruled in the same manner. Preliminary questions, however, must be ruled in these cases that were not involved in *Hamilton Bros.* Those questions relate to whether witness Benberg was a qualified witness and, if so, whether he was adequately prepared to express an expert opinion.

■ Defendant's attack on witness Benberg's qualifications and upon his preparation, even if he could be assumed to have been qualified, must be sustained. Plaintiffs' deposition of April 20, 1965, admitted in evidence solely on the question of witness Benberg's qualifications, and witness Benberg's State court testimony read in the trial of these cases demonstrate beyond question that this witness was neither qualified nor did he make the sort of preparation for testifying that a qualified expert is required

3. We are indebted to our Brother Becker for the nautical metaphor. See Ringsby Truck Lines, Inc. v. Beardsley, 8 Cir. 1964, 331 F.2d 14 at 19.

by law to make in order to have adequate data upon which to base an expert opinion.

The record quite accurately reflects that plaintiffs were well advised of the grave doubt in the Court's mind in regard to witness Benberg's qualifications that arose as a result of our reading his April 20, 1965 deposition in preparation for the trial of these cases. When plaintiffs elected to read witness Benberg's State court testimony we stated for the record that at the conference held immediately after the jury had been empaneled we had afforded plaintiffs the opportunity "to regroup and advance to the rear." We also stated of record that plaintiffs' "counsel indicated that he was satisfied that the qualifications of Mr. Benberg did appear sufficiently from the transcript of the State Court."

While we have held that witness Benberg's qualifications were not established and that, even if established, he was not sufficiently prepared to express an expert opinion, the consequences of plaintiffs having elected to rest their case upon witness Benberg's testimony were not as drastic as might seem apparent. This case, like the *Hamilton Bros.* case, involves so many undisputed questions of fact that even if witness Benberg had been as qualified as witness Myers in *Hamilton Bros.*, the same result would be reached.

The undisputed physical condition of the Crooked River channel, both above and below the Santa Fe right-of-way, the existence and non-existence of levees, the height of the Missouri River, and the other undisputed physical data make clear that the opinion of any expert that the statute had been violated and that such violation was the proximate cause of plaintiffs' crop damage would necessarily rest upon conjecture and speculation. In addition to Hamilton Bros., see and compare O'Connor v. Pennsylvania Railroad Company, 2 Cir.

1962, 308 F.2d 911, in which Judge Kaufman affirmed Judge Christenson's order sustaining defendant's motion n. o. v.

We therefore grant defendant's motion for judgment notwithstanding the verdict. We further find and determine that all grounds stated in said motion are tenable except paragraph 12 which states that the Court erred in refusing two of defendant's requested instructions. That ground is not tenable because defendant's motions for directed verdict should have been sustained and no instructions whatever should have been given the jury.

Plaintiff's motion for partial new trial on the sole issue of damages should be, and is, hereby denied.

In order that the Court of Appeals be advised of our view in the event it is determined on appeal that the judgment entered pursuant to defendant's motion for judgment notwithstanding the verdict is vacated or reversed, we state that in that event, but only in that event, a new trial should be granted.

It is our view that if the Court of Appeals should determine that we err in finding that there is insufficient evidence to support any verdict, viewed in accordance with the rule stated in Hanson v. Ford Motor Co., supra, it would in that event be our view that the verdict on the question of liability is against the weight of the evidence and that the award of damages should also be set aside because that award is likewise against the weight of the evidence and obviously inadequate under the undisputed testimony.

The judgment heretofore entered for plaintiffs should be and is hereby set aside and held for naught. The Clerk, in accordance with this memorandum and order, is directed to enter judgment for the defendant notwithstanding the verdict.

It is so ordered.