Ivan **HEWITT** et al., Plaintiffs-Appellants,

v.

**CHICAGO, BURLINGTON & QUINCY RAILROAD COMPANY, a Corporation, Defendant-Appellant.**

No. 52511.

Supreme Court of Missouri, Division No. 2.

March 11, 1968.

Rehearing Denied April 8, 1968.

Harold Miller, Maysville, Beavers, Thomson & Beavers, Maryville, for appellants (plaintiffs).

Robert L. Ross, Albany, Clyde J. Linde, Charles White Hess, of Linde, Thomson, VanDyke, Fairchild & Langworthy, Kansas City, for appellant (defendant).

LAURANCE M. HYDE, Special Commissioner.

Action by landowners for damages from flooding, totaling $50,639.90, claimed to have been caused by defendant's railroad bridge, alleged to have been constructed without suitable openings in violation of Sec. 389.–660, RSMo, V.A.M.S. Plaintiff had verdict and judgment for amounts totaling $8,965.00. The court sustained motions for new trial of all parties so jurisdiction of appeals from these orders is in this court because the amount involved is the amount originally sought by plaintiffs.

Plaintiffs' motion was for a new trial on the issue of damages only, claiming the damages awarded were grossly inadequate and against the weight of the evidence. Defendant's motion was for judgment in accordance with its motion for directed verdict or in the alternative for a new trial, alleging among other errors what it calls four major errors, namely: instructions permitting lump sum verdicts for five years' flooding (1960–1964), permitting expert opinions not based on facts, failure to rule that defendant's bridge was not the proximate cause of plaintiffs' damage, and failure to instruct that defendant was under no duty to anticipate in 1964 a flood of such magnitude.

The court on September 20, 1966, made the following order: "Arguments heard on motion for new trial by plaintiffs and defendant; same are considered; plaintiffs' Motion for New Trial sustained; defendant's motion for New Trial sustained." On September 23, 1966, defendant filed notice of appeal from this order and plain-

tiffs filed a notice of appeal on September 26, 1966.

Thereafter, on September 28, the court entered a new order as follows: "Now on this date the Court on its own motion sets aside the order heretofore entered on September 20, 1966, and in lieu of finds Defendant's for new trial sustained because of error in giving instructions No. 3 and 12 inclusive and because the verdict is against the weight of the evidence; plaintiffs' motion for new trial on issue of damages only overruled; all parties notified." Plaintiffs filed a notice of appeal from this order on November 17, 1966, as authorized by a special order for appeal made by this court.

■ There is nothing in the record to show any notice was given to plaintiffs before the order of September 28th was made and plaintiffs claim none was given. We can only construe the reference to notification in this order as meaning the parties were notified it had been made. Therefore, on authority of Albert J. Hoppe, Inc. v. St. Louis Public Service Co., 361 Mo. 402, 235 S.W.2d 347, 23 A.L.R.2d 846, we must hold this order invalid and determine the meaning and effect of the order of September 20, 1966. See also Quinn v. St. Louis Public Service Co., Mo.Sup., 318 S.W.2d 316. Because the order of September 28th is invalid it is not necessary to decide whether the court could have had authority to enter it after notices of appeal were filed.

■ Certainly the order of September 20th is an inconsistent order, granting defendant a general new trial which is what its motion sought and granting plaintiffs a new trial on the issue of damages only which was the sole ground raised and relief sought by plaintiffs. Thus in the relief granted the parties there was a direct conflict. Our view is that the broader general relief granted must prevail over the limited, if we find merit in any of defendant's claims of error. We will therefore consider first the above four alleged major errors briefed by defendant.

Defendant's first contention is the lump sum verdict including damages for several years of flooding, as authorized by the instructions, was prejudicial error. Defendant cites Cottier v. Chicago, B. & Q. R. Co., Mo.App., 33 S.W.2d 173; Jones v. Chicago, B. & Q. R. Co., 343 Mo. 1104, 125 S.W.2d 5; Brown v. Quincy, O. & K. C. R. Co., 198 Mo.App. 71, 199 S.W. 707, in which damages for each of several years of flooding were required to be separately determined. Defendant also cites Flowers v. Smith, 214 Mo. 98, 112 S.W. 499 (separate libels); Conran v. Fenn, 159 Mo.App. 664, 140 S.W. 82 (separate slanders) and Smith v. Chicago, R. I. & P. Ry. Co., 183 Mo.App. 180, 170 S.W. 324 (damages on separate causes of action) which were reversed because lump sum verdicts were authorized. In the Flowers case a motion to elect was overruled; in the Conran case there were other grounds for reversal and this was also true in the Smith case. The trouble with defendant's contention here is that it made no motion to require the separate claims of plaintiffs to be stated in separate counts in the petition, with separate counts for each year in which damages were claimed by each; nor did defendant make any objection to evidence being received for each of the separate years claimed from each plaintiff under the general petition of all of them; nor did defendant make any request for separate submission of damages of any of the plaintiffs for each flood involved or made any objection to the way these were being submitted. Moreover, the record does not show that defendant made any request for instructions.

■ It is true that, where an obstruction of a watercourse causes annual or occasional flooding of lands, each repetition of overflow gives rise to a new cause of action, 56 Am.Jur. 859, Waters, Sec. 443; 93 C.J.S. Waters § 36(1) b, p. 656; Annotation 5 A.L.R.2d 320, 323; 2 Farnham on Waters 1847, Sec. 581. (We note from the record

in our files in Smithpeter v. Wabash Ry. Co., 360 Mo. 835, 231 S.W.2d 135, 199 A.L.R. 2d 950, cited by both parties, the petition was in separate counts for each landowner plaintiff for each year's flood damage and was submitted to require separate verdicts on each.) "(W)here there are several issues in the case, in the absence of an objection that the verdict has not passed on the issues separately a general verdict * * * in no event is open to question when objection is not taken at the proper stage of the proceedings." 53 Am.Jur. 722, Trial, Sec. 1043; see also 89 C.J.S. Trial § 502, p. 172. Furthermore, Rule 55.37, V.A.M.R. provides: "A party waives all objections and all other matters then available to him by motion by failure to assert the same by motion within the time limited by Rule 55.36 except (1) Failure to state a claim upon which relief may be granted, (2) Failure to state a legal defense to a claim, and (3) lack of jurisdiction over the subject matter." Rule 55.31 specifically includes in objections to be raised by motion "whether or not the same may appear from the pleadings and other papers filed in the cause. * * * (9) That several claims have been improperly united." In Helm v. Riss & Co., Inc., Mo.App., 194 S.W.2d 713, 714, it was ruled (applying what is now Rule 55.36, then Sec. 66, Laws 1943) "The effect of this assignment is that there were two incompatible causes of action joined in one count. * * There was no attack made on the petition by demurrer, motion or answer, and if there is a misjoinder of causes in one count, it is waived." See also many cases under Sec. 406(8), Pleading, West's Missouri Digest. Therefore, we hold defendant's failure to make objection by appropriate motion to pleading and submitting damages of some plaintiffs (four plaintiffs claimed damages only for the 1964 flood) for several years of flooding in single counts and instructions were waived by defendant. The claim of defendant that as to the floods of 1960–1963 there was no evidence to establish defendant's liability will be considered with its assignment that plaintiffs' evidence was not sufficient to show defend-

ant's bridge was the proximate cause of their damage.

The 102 River, having its source in Iowa, runs to the south through Nodaway County and into Andrew County. After the river enters Andrew County it runs in a southerly direction along the west side of the town of Rosendale, then bends to the east and runs south of the town where it is crossed by the defendant railroad. Defendant's bridge is about a half mile south of the center of the town but it is nine-tenths of a mile, along the channel of the stream, from the bridge on State Highway 48 west of the town to defendant's bridge. Plaintiffs are landowners, some owning town property but most with farm land north of defendant's bridge, much of it between defendant's bridge and Highway 48 east of the town but some north of the Highway. The U. S. Geological survey map and other maps in evidence show very little difference in elevation of the land between defendant's bridge and Highway 48 and for some distance north of the Highway. There was a drop of two feet between the two bridges. Much of plaintiffs' land was leveed and overflowed when the levees were breeched by the flood waters. Defendant's bridge had solid steel girders ten feet high, with its track at their upper level. The water was five and one-half feet up on this girder on June 21, 1964. There was also testimony that in 1964 there was a great amount of logs and other debris up against defendant's bridge and there were photographs in evidence to show this. The railroad was on an embankment built across the river valley from each side of its bridge. The 1964 flood was the greatest of any of the floods of 1960–1964. In all of these floods the river also was out of its banks below defendant's bridge.

We first consider defendant's claim of error of failing to instruct the jury that the 1964 flood was unprecedented and that defendant was under no duty to anticipate it. However, defendant does not claim to have offered such an instruction

and we find no ground stated in its motion for new trial on refusal to so instruct although defendant in its motion did ask for judgment in accordance with its motions for directed verdict on that ground. They do not raise that issue on this appeal, seeking only a new trial on the merits. We fully discussed the act of God issue in Kennedy v. Union Electric Co. of Missouri, 358 Mo. 504, 216 S.W.2d 756, saying: "When the result in part is ascribable to the participation of man, either through active intervention or neglect or failure to act, 'the whole occurrence is thereby humanized, as it were, and removed from the operation of the rules applicable to the acts of God' * * *. Usually, however, whether a flood 'is such as should have been anticipated and provided against is a question for the jury.' We note there was evidence of as great a flood in 1915. For reasons hereinafter stated we consider the plaintiffs had substantial evidence on the issue of defendant's negligence.

■ Defendant contends that plaintiffs did not establish by their evidence that defendant's bridge was the proximate cause of their damage at least as to floods in years other than 1964. Plaintiffs' expert testimony concerned only the 1964 flood. Defendant also says plaintiffs' expert's opinions as to the 1964 flood were not based on sufficient facts personally observed, properly hypothesized or known to the jury and so were not sufficient to support any verdict.

As to the latter, plaintiffs used the deposition of their expert Fred A. Johnson taken by defendant who based his opinions on the study and records of defendant's expert E. J. Myers stated in Myers' deposition. (Myers testified at the trial.) Defendant says Johnson's testimony was not sufficient to support the verdict because it was not based on sufficient facts or personal study to warrant his conclusions. Defendant further says the facts used by Johnson from Myers' deposition were not hypothesized and that it cannot be determined what facts he used as a basis for his conclusions. Johnson had designed bridges for the State Highway Department including the one west of the town. He examined the area in December 1965, and testified in considerable detail about this and about his computations of the bridge opening, the drainage area of the river, measurements he used that were made by others including elevations, profiles and high water marks. His opinion was read without objection stating there was back water effect retarding the flow between the two bridges and that this back water effect from defendant's bridge went beyond the Highway bridge. (Objection was made to stating the cause of flooding certain land and there were motions to strike but no point is made specifically on this appeal as to overruling these objections and motions; and the record does not show what part of the testimony offered from the deposition was examination by defendant's counsel or what part was examination by plaintiffs' counsel.) Johnson stated his opinion that defendant's bridge had the effect of slowing the flood water and "causes some overflow to go around Rosendale that wouldn't if they had a sufficient bridge with sufficient clearance." This would cause flooding of land owned by some of the plaintiffs on both sides of Highway 48 east of the town. Our view is that facts do appear in Johnson's deposition which would be and apparently were the basis for his opinions as to the effect of the bridge. In any event, there was substantial evidence by lay witnesses to show the insufficiency of the opening under its bridge to afford sufficient outlet in 1964 and that was the basis of plaintiffs' claims. Their evidence was that the water flowed against and piled up against the girder of the bridge and was higher on the upstream side of the bridge than on the downstream side and resulted in a slower current upstream; that there was current downstream from defendant's bridge when there was none between it and the Highway bridge; and that the water did not go out and go east of the town until it flowed against and was backed up by

defendant's bridge. They also testified that the opening under the bridge and the river bed north of it for as much as a mile north of it had filled in over the years due to the bridge holding the water back; that drift and logs piled against defendant's bridge had reduced the size of the opening under the bridge; and that the water receded sooner south of the bridge than north of it so that similar land south of the bridge could be replanted while the land north of it remained too wet. We held in Smithpeter v. Wabash R. Co., 360 Mo. 835, 231 S.W.2d 135, l. c. 144, that such testimony "was substantial evidence to make a jury case." See Snow v. Thompson, Mo.App., 178 S.W.2d 796, 798. See also Kennedy v. Union Electric, 358 Mo. 504, 216 S.W.2d 756, 761, concerning lay opinions based on observation and experience. Defendant's expert gave his opinion that its bridge had no appreciable effect on the flood level on plaintiffs' lands but we hold this issue was for the jury.

As to defendant's contention, that its bridge was not shown to be the proximate cause of their damage by floods other than 1964, our view is that it must be sustained. Plaintiffs' expert said he had no opinion as to whether defendant's bridge caused floods in years prior to 1964. Plaintiffs' evidence was mainly about the damages sustained in those years. Plaintiffs seem to assume that the testimony concerning 1964 conditions apply to the preceding years. However, there is nothing specific in the evidence to show the extent of any filling of the river bed in any of those years or the size of the opening under defendant's bridge. It does appear that at flood stage the river would wash out a deep hole under defendant's bridge which would increase the flow under it and that this would fill between floods. There was no testimony that the stream was filled with piles of logs and other debris at the bridge in any of the preceding years as it was in 1964. Moreover, one of plaintiffs said there was no flood damage in 1961 while another had no damage in 1962, and they did not explain this, apparently differing as to whether there were floods in those years. It also appeared that between 1952 and 1960 land that was leveed did not overflow and it was said these were fairly dry years. If so, defendant's bridge may not have had much effect on filling the channel during those years. Our view is that plaintiffs' evidence was insufficient to show that defendant's bridge caused the flooding of their lands in the years prior to 1964 but leaves this to speculation and conjecture. See Atchison, Topeka & Santa Fe Ry. Co. v. Hamilton Brothers (USCA 8th) 192 F. 2d 817; Evans v. Massman Construction Co., 343 Mo. 632, 122 S.W.2d 924. Since damages for those years are included in plaintiffs' lump sum verdicts, the court's order granting a new trial on all issues must be affirmed.

We note that four of the plaintiffs claimed damages for 1964 only. If they were granted new trial on the issue of damages only, they would have to have separate trials from the other plaintiffs. Trials on separate single issues are mainly discretionary and all of the claims involved are so closely related with so much of the same evidence applicable to each that it would seem improper and unreasonable to take any action which would finally determine defendant's liability for the 1964 flood to some plaintiffs but not to others. We cannot conclude that the court's conflicting order intended any such result and we consider it would have been an abuse of discretion to do so in this case where there was such conflict in the evidence on the effect of defendant's bridge. This is not a case where there could be a final judgment as to some plaintiffs as in Chappell v. City of Springfield, Mo.Sup., 388 S.W.2d 886, 892, because these plaintiffs, claiming only 1964 losses were not satisfied with the damages awarded them. They will have the opportunity to relitigate that issue, as will the other plaintiffs, in connection with the issue of liability.

The order is affirmed for a new trial for all plaintiffs on all issues.

PER CURIAM:

The foregoing opinion by LAURANCE M. HYDE, Special Commissioner, is adopted as the opinion of the Court.

All concur.