## J. S. WALSH v. ASA PAINE and Another.[1]

October 24, 1913.

Nos. 17,954—(30).

**Fraudulent representations.**

1. In cases of fraud and deceit the defendant is responsible for those re-

[1] Reported in 143 N. W. 718.

sults which must be presumed to have been within his contemplation at the time the fraud was committed, and plaintiff may recover for any injury which is the direct and natural consequence of defendant's representations.

**Question for jury.**

2. Defendants fraudulently induced plaintiff to buy stock owned by one of them in a corporation and a mortgage owned by said defendant on property of such corporation. Plaintiff thereafter advanced money to the corporation. Evidence considered and *held* to warrant submitting to the jury the question of whether it was within the contemplation of said defendant that plaintiff would advance money to the corporation.

**Evidence inadmissible.**

3. It was prejudicial error to receive in evidence the schedules of assets and liabilities made by the corporation in bankruptcy proceedings more than four months after the alleged fraud was committed.

**Same.**

4. It was also prejudicial error to receive evidence of acts of one of the defendants not connected with the alleged fraud.

Action in the district court for St. Louis county against Asa Paine and A. M. Russell to recover various sums of money paid to them. The facts are stated in the opinion. The case was tried before Dibell, J., who denied separate motions for a directed verdict in favor of each defendant and a jury which returned a verdict of $6,-871.93 against both defendants. Defendants' motions for judgment notwithstanding the verdict were denied and their motions for a new trial were granted. From the order granting a new trial, plaintiff appealed. Affirmed.

*John B. Arnold* and *Arnold & Arnold,* for appellant.
*Fryberger & Fulton,* for respondent Paine.

BUNN, J.

This action was to recover damages for the fraud of defendants in inducing plaintiff to purchase defendant Paine's interest in the Russell Motor Co. and to advance money to the company thereafter. There was a verdict for $6,871.93 against both defendants. Each defendant moved for judgment notwithstanding the verdict or for a

new trial. The motions for judgment were denied, but a new trial granted as to each defendant. Plaintiff appeals from these orders.

The new trial was granted because the trial court was of the opinion that there was prejudicial error in its rulings on the admission of evidence and in the charge. It is clear from the memorandum filed with its order that the trial court considered the verdict sustained by the evidence. We have then to consider whether there was prejudicial error in any of the rulings on the trial or in the charge. In this situation where the appellant is necessarily unable to point out the errors, it is the duty of the respondent to make clear to the court the points relied upon to sustain the granting of a new trial.

A brief statement of the facts is necessary to an understanding of the questions before us. Defendant Russell was the manager and principal owner of the stock of the Russell Motor Co., a corporation engaged in the sale and repair of automobiles in Duluth. In the fall of 1910 defendant Paine, who was a stockholder and president of the Northland Motor Co. of Minneapolis, made an examination of the affairs of the Russell Co., and agreed to advance money to it on the company's giving satisfactory security. The Russell Co. was to handle the cars of the Northland Co. Twenty-five shares of the Russell Co. stock were issued to Paine, who testified that this was given to him for the Northland Co., in consideration of the latter company turning over to the Russell Co. the agency for the Stoddard-Dayton cars; the Northland Co. agreeing to supply the cars for two years without charges for commissions. Paine advanced $2,000 in cash to the Russell Co. The company gave Paine its note for $5,000 and to secure it a chattel mortgage covering its garage equipment, valued at $4,032. It was the understanding, evidenced by another writing, that at any time the Russell Co. should repay moneys advanced by Paine or the Northland Co. from time to time in the future, and pay all debts due Paine or the Northland Co., the note would be returned and the mortgage satisfied. Another writing of the same date recites that the Russell Co. may within two years buy back the 25 shares of stock for $2,500, provided all indebtedness to the Northland Co. has been paid.

In April, 1911, plaintiff was induced by Paine to buy his interest in the Russell Co. Paine sold to plaintiff the 25 shares of stock, and his claim for the $2,000 he had advanced the company, plaintiff paying $3,250. The $5,000 note and the chattel mortgage were cancelled, and a new note for the same sum and a new chattel mortgage covering the same property were executed to plaintiff. As a part of the transaction, a writing was executed which recited that plaintiff would return the note and satisfy the mortgage whenever the Russell Co. should pay the moneys advanced by plaintiff from time to time in the future, and all just debts due him, and reciting that the loans advanced by plaintiff should draw interest at not to exceed six per cent. Another writing was executed covering the conditions upon which plaintiff received and was to hold the 25 shares of stock. In short, all the papers evidencing the relations between Paine and the Russell Co. were cancelled and exactly similar papers executed to evidence the relations between plaintiff and the company.

It was plaintiff's claim, and there is evidence to support it, that he was induced to take this interest in the Russell Co. by fraudulent representations made by Paine and Russell. As the question of the sufficiency of the evidence to sustain the verdict is not involved, on this appeal, we need say nothing further as to these fraudulent representations. It would seem clear that plaintiff took Paine's place in the corporation. We must assume that he did so because of fraud on the part of both defendants; that Paine, with Russell's help, unloaded onto plaintiff.

After the sale of the stock to plaintiff, and the other transactions mentioned, Paine took no further part in the affairs of the corporation. Russell managed the company, plaintiff apparently taking little active part, though it had been contemplated that he would have charge of the shop and the financial part of the business. From time to time plaintiff advanced to Russell for the company sums of money to pay indebtedness of the company for automobiles and supplies purchased.

In June, 1911, Paine met plaintiff in Duluth and complained because the Russell Co. had not paid the Northland Co. for automo-

biles purchased. Plaintiff seems then to have discovered that he had been "flim-flammed," as he expressed it, and placed on record the chattel mortgage. At the same time a chattel mortgage held by Paine was recorded. The recording of these mortgages seems to have produced a crisis in the affairs of the Russell Co., and on August 21, 1911, it was adjudged bankrupt in the United States district court.

The alleged fraudulent representations of defendants related to the solvency of the corporation, and the extent of its business, assets and liabilities. It was of course essential to a recovery that the falsity of these representations at the time they were made be proved. There was evidence fairly tending to show that the company was in bad condition, if not actually insolvent at this time, and there was evidence to the contrary. It was one of the issues on the trial, as of course was the question of defendants' knowledge of the condition of the company.

We now take up respondent's claims of error in the rulings of the trial court, relied on to sustain the order granting a new trial.

1. The most important question is whether the trial court was in error in receiving, over the objections of defendant Paine, evidence of the advances or loans made by plaintiff to the Russell Co. after the sale of the stock by Paine to plaintiff. The same question is involved in an instruction of the court permitting the jury to find against Paine for the amount of these advances, in case they should find that it was contemplated when the sale was made that plaintiff should make advances to the company. The precise claim of respondent in this connection is that there was no evidence that Paine could or ought to have contemplated that plaintiff would loan money to the company.

The rule is clear and not disputed here. In cases of fraud or deceit the defendant is responsible for those results which must be presumed to have been within his contemplation at the time of the commission of the fraud, and plaintiff may recover for any injury which is the direct and natural consequence of his acting on the faith of defendant's representations. It must appear that the fraud and damage sustain to each other the relation of cause and effect, or at least that the damage might have resulted directly from the fraud.

20 Cyc. 137, and cases; Reynolds v. Franklin, 44 Minn. 30, 46 N. W. 139, 29 Am. St. 540; Vilett v. Moler, 82 Minn. 12, 84 N. W. 452. While the sequence need not be so close as in actions of contract, it still must appear in an appreciable sense that the damage flowed from the fraud as the proximate and not the remote cause. Brackett v. Griswold, 112 N. Y. 469, 20 N. E. 376.

2. Applying these rules to the evidence in this case, we are of the opinion that the jury might find that Paine contemplated at the time he induced plaintiff to purchase the stock, to take the mortgage, and sign the various papers mentioned, that plaintiff would advance money to the company, the advances to be secured by the mortgage. The various writings were prepared by Paine, and of course he knew their contents. Indeed they were exactly similar in all respects to the contracts before existing between himself and the company. Clearly these writings, while they do not obligate plaintiff to loan the company money, contemplate that he probably will do so, providing for the rate of interest on and repayment of such sums as he may advance, and for security. Practically, as we have said before, Paine unloaded upon plaintiff not only his stock, but all the interest that he had in the company, including the burdens. It is true that plaintiff says in his testimony that Paine did not tell him he was to advance more than the $2,000, and that he, plaintiff, did not agree to take Paine's place and carry the deal through. But, on the whole case, we think it was not error to receive evidence of these advances by plaintiff, or to give the instruction permitting the jury to find against Paine for the amount thereof. If the evidence justified the conclusion that Paine and Russell conspired to induce plaintiff by fraud and deceit to part with his money, a question not involved on this appeal, a recovery against both for the $3,250 paid for the stock and the mortgage, and for the amount of the advances, was proper.

3. The trial court received in evidence over the objections of both defendants, the schedules of assets and liabilities filed by the corporation in the bankruptcy proceedings, as well as the petition and adjudication; evidence of the sale of the property and the expected dividend. We think this was prejudicial error which justified the

granting of a new trial. The schedules made by the corporation in September were not evidence of its insolvency in April. Redding v. Godwin, 44 Minn. 355, 46 N. W. 563. As against Paine at least, the schedules were hearsay. Halbert v. Pranke, 91 Minn. 204, 97 N. W. 976. We are unable to see that these schedules had any relevancy to any issue in the case, except that of the solvency of the corporation, and on that issue they were inadmissible. They had no bearing on the question of damages.

4. We also are of the opinion that it was error to admit evidence tending to show dishonest acts on the part of Russell that were not any part of the res gestae, or connected in any way with Paine. The latitude allowed counsel in this respect was too great, and may have prejudiced the jury. In regard to the "Schall car," it was error to admit the evidence, but this may have been cured by the instructions to disregard such evidence.

Our conclusion is that the trial court rightly granted a new trial. Order affirmed.