fact or in accordance with an erroneous rule or principle, but such instructions must be brought before it by appropriate motion.

We adhere to our original decision.

## ALVIN W. PERKINS v. AXEL W. MEYERTON AND ANOTHER.[1]

January 26, 1934.

No. 29,606.

[1]Reported in 251 N. W. 559.

*J. Arthur Bensen* and *V. J. Michaelson,* for appellant.
*Atwood & Quinlivan,* for respondent.

*OLSEN, Justice.*

Defendant Axel W. Meyerton appeals from a judgment against him. The action was dismissed as to defendant R. W. Munson, and Meyerton is hereinafter referred to as defendant.

The action is one to recover damages. for fraudulent representations claimed to have been made by defendant to induce plaintiff to purchase certain machinery, equipment, supplies, and business of a milk and cream distributing plant and to lease the part of a creamery building wherein said business was conducted at St. Cloud, Minnesota. The plant and equipment were owned or controlled by defendant.

The first four assignments of error reduce themselves to the question of whether the evidence is sufficient to sustain the finding by the jury that there was actionable fraud. It appeared that one Tiffany had operated the business for about four months, up to sometime in November, 1931, when he sold out. In December, 1931, Danielson and Munson took over the equipment and a lease of the plant and operated it until it was sold out to plaintiff in May, 1932. Plaintiff purchased certain of the machinery and equipment from Danielson and Munson and entered into a lease with defendant for the premises for three years. The lease contains provisions in reference to selling cream by plaintiff to defendant and buying all butter needed by plaintiff from defendant. It contains further provisions to the effect that defendant shall have the exclusive right to sell milk and cream at retail from the premises and that plaintiff shall sell no milk or cream at retail from the plant. The result of this was that plaintiff could not sell any milk or cream to his customers at the plant, but could sell only at their residences or places of business from his delivery wagons or trucks, and defendant, if he saw fit, could purchase from plaintiff, at wholesale, all the cream the plaintiff had, thus leaving plaintiff with no cream to

sell. Plaintiff was also prevented from buying butter from anyone other than defendant. The provisions of the lease are not here in question but have some bearing on the good faith and intent. Defendant was operating the creamery in the building and, by selling milk and cream there at retail, was in direct competition with plaintiff. Inferentially defendant could sell milk and cream at the plant with less expense or at lower cost than plaintiff could sell the same by hauling it out to his customers.

The representations submitted by the court to the jury were in substance these: That defendant represented to plaintiff that Munson, who operated the milk plant at the time of the negotiations, had been doing a profitable business and making money even though he was a poor manager, and had been selling about 100 quarts of milk a day; that Tiffany, the operator of the plant for four months in 1931, had been selling from 180 to 200 quarts a day.

Part of the negotiations were carried on by correspondence. Plaintiff resided in South Dakota. He made a trip to St. Cloud, inspected the plant, and negotiated for it at that time, but made no investigation as to other matters.

Without attempting any detailed recital of the evidence, we hold that these representations were representations of material facts; that the evidence justified the jury in finding that the representations were made; that they were false and were made with intent to deceive and to induce plaintiff to act thereon; that plaintiff relied thereon and was induced thereby to make the deal and suffered damages. This justified the jury in finding actionable fraud.

There were no exceptions to the charge of the court submitting the questions of fraudulent representations to the jury. A motion for a new trial was made and denied. No appeal was taken from the order denying that motion.

■ It is claimed that plaintiff, by his actions after discovery of the fraud, waived it. Plaintiff took possession of the plant and equipment on June 1, 1932, and conducted the business until August 13 of that year. He endeavored to the best of his ability to make the business profitable and successful, but failed and lost money. Then, on or about August 13, he negotiated with defendant and

sold to him the equipment purchased from Danielson and Munson, also his interest in two trucks and any other equipment and supplies then used by him in connection with the business. Plaintiff quit the business at that time. What, if anything, was done about the lease is not stated. The consideration for the sale to defendant was arrived at by figuring the agreed value of the equipment, supplies, and trucks plaintiff had at the time. The total amounted to $738, out of which plaintiff received $227 in cash. The balance represented outstanding debts incurred by plaintiff in the business. No release or settlement by plaintiff of any claim for damages for fraud is pleaded or shown. The evidence does not show waiver or ratification of the fraud as a matter of law, and the question does not appear to have been raised at the trial or by motion for a new trial. Plaintiff could complete performance of his contract of purchase even after discovering the fraud. Schmitt v. Ornes Esswein & Co. 149 Minn. 370, 183 N. W. 840.

It is argued that the damages awarded by the jury did not arise by reason of the fraud but were caused by plaintiff's operation of the business after he discovered the fraud. Plaintiff discovered the falsity of part of the representations sometime in June but did not discover the falsity of others until near the date when he sold out and quit. The measure of damages in this kind of a case is well settled. It is the difference between the actual value of the property retained by the defrauded purchaser and the price paid, and, in addition thereto, such special damages as proximately resulted from the fraud. Magnuson v. Burgess, 124 Minn. 374, 145 N. W. 32; Barthelemy v. Foley Elev. Co. 141 Minn. 423, 170 N. W. 513. The one general principle of universal application is that the party guilty of the fraud is liable for such damages as naturally and proximately resulted from the fraud. Townsend v. Jahr, 147 Minn. 30, 179 N. W. 486. The transaction entered into was completed and the consideration paid before plaintiff discovered the fraud. While it is true, as a general rule, that a party defrauded cannot, after discovery of the fraud, increase his damages by continuing to expend money on the property retained and recover for such expenditures, the rule is not without limitations. Plaintiff

purchased not only personal property but what he believed was a profitable, going business. Had he abandoned the business and property when he first discovered the falsity of a part of the representations, it is likely that greater damage would have resulted to both parties than by keeping the business going for a short period until he could sell it. Clark v. Wells, 127 Minn. 353, 149 N. W. 547, 549, L. R. A. 1916F, 476, while a suit for rescission, recognizes the fact that, where the property is a going business, the defrauded party is not required to abandon it in order to obtain relief. As there said [127 Minn. 358]:

"Under such circumstances it was at least proper for him [the defrauded party], if not his duty, to take such steps as were reasonably necessary to conserve the value of the business."

The court gave a complete and clear charge as to the damages recoverable. In part, the charge to the jury was that the only damages plaintiff could recover, if he recovered, were such as were the direct and natural result of the fraud, if the jury found there was fraud; that he could, in any event, recover only such pecuniary loss as the jury found from the evidence he had sustained by reason of the misrepresentations.

Plaintiff testified that he expended some $1,200. He gave up a good job at Aberdeen, moved to St. Cloud, and took over the business. The jury could find that his damages amounted to the $500 awarded before he received any information as to the falsity of any part of the representations made. The evidence sufficiently sustains the award of damages.

Complaint is made of the argument of plaintiff's counsel and of certain questions by counsel to witness. We do not find any misconduct justifying a reversal and do not deem further discussion thereof necessary.

Judgment affirmed.