## NORMAN HALL AND ANOTHER v. CITY OF ANOKA.

97 N. W. (2d) 380.

June 26, 1959—No. 37,696.

*Cutter & Babcock,* for appellants.

*Lipschultz, Altman, Geraghty & Mulally, James H. Geraghty,* and *Roger R. Lenzmeier,* for respondent.

FRANK T. GALLAGHER, JUSTICE.

Appeal from an order of the district court.

Plaintiffs, who are husband and wife, claim damages for injuries sustained by plaintiff Hazel Hall, arising out of a fall which plaintiff alleges resulted from a defectively maintained public sidewalk covered with snow and ice which contained uneven ridges, depressions, and other irregularities. The fall occurred in the city of Anoka on December 6, 1955.

The case was tried before a jury, and after completion of plaintiffs' case, the court granted the motion of defendant city for a directed verdict in its favor. This appeal was taken from the order denying plaintiffs' motion for a new trial.

Generally with respect to the liability of a municipality for defectively maintained sidewalks the rule is stated in Larson v. City of Mankato, 239 Minn. 484, 485, 59 N. W. (2d) 312, 313, as follows:

"* * * The rule is well established that a municipality is required to exercise reasonable care in keeping its streets and sidewalks in a reasonably safe condition for pedestrians using them. 4 Dunnell, Dig. & Supp. §§ 6818, 6829. Although a city is not liable generally for injuries sustained because of mere slipperiness of its sidewalks, Henkes v. City of Minneapolis, 42 Minn. 530, 44 N. W. 1026, liability may arise if the municipality allows ice and snow to accumulate on a sidewalk or crosswalk for such a length of time as to cause the formation

thereon of slippery and dangerous ridges, depressions, hummocks, and irregularities."

Therefore, as a requisite to liability on the part of defendant city, it is necessary that the injury did not occur because of mere slipperiness of its sidewalk. Another essential to liability is created by a provision in the city charter which requires that in order to recover plaintiff must show that the defectively maintained sidewalk existed for a period of more than 10 days immediately prior to the date of the accident, in the absence of actual notice. Anoka City Charter, c. XVI, § 2.

The single legal issue raised by plaintiffs is whether the evidence sustained a directed verdict in favor of the defendant city.

On motion for a directed verdict the evidence must be viewed in the light most favorable to the party opposing it. Merchants & Farmers Mutual Cas. Co. v. St. Paul-Mercury Ind. Co. 214 Minn. 544, 8 N. W. (2d) 827. The rule is well settled in this state that a motion for a directed verdict, which by its very nature accepts a view of the entire evidence most favorable to the adverse party and admits credibility of evidence in his favor and all reasonable inferences to be drawn therefrom, should be granted only in cases where it would be clearly the duty of the trial court to set aside a contrary verdict as being manifestly against the entire evidence or where it would be contrary to the law applicable to the case. Caron v. Farmers Ins. Exch. 252 Minn. 247, 90 N. W. (2d) 86; Erickson v. Strickler, 252 Minn. 351, 90 N. W. (2d) 232; Hanson v. Homeland Ins. Co. 232 Minn. 403, 45 N. W. (2d) 637; Kolatz v. Kelly, 244 Minn. 163, 69 N. W. (2d) 649. The right to direct a verdict also involves the duty to do so but such right is to be cautiously and sparingly exercised. Kolatz v. Kelly, *supra.*

With respect to whether the injury occurred because of mere slipperiness or due to slippery and dangerous ridges, depressions, hummocks, and irregularities, plaintiff Hazel Hall testified that on December 6, 1955, between 4:30 and 5 p. m., while proceeding north on the westerly sidewalk of Second Avenue South in Anoka, she started to slip and her foot hit a chunk of "hard snow, icy snow," causing her to fall. As a result of her fall Mrs. Hall broke her left leg and re-

ceived other injuries. She claimed that she fell on the sidewalk at a point opposite the end of the window of the Anoka Herald and about 3 feet from the edge of the Herald building. She described the surface of the walk upon which she fell as "very irregular, lumpy, ridged," compacted ice and snow. Other witnesses described the sidewalk in front of the Anoka Herald office as an "accumulation of ice and snow," covered with "ice and snow," containing ridges, footmarks, and heel marks, with rough ice close to the windows, "like people had been tramping the snow." Defendant city calls attention to the fact that while plaintiff testified there were hummocks and ridges there were other witnesses who testified that there was a thin coating of smooth ice where plaintiff fell.

With reference to whether the condition had existed 10 days prior to the accident, there was testimony that the sidewalk in front of the Herald office had never been shoveled prior to the accident during the winter season of 1955 and that the walk between November 1 and December 6, 1955, was covered by ice and snow. The city engineer of Anoka testified that since about 1950 he kept a record of the snowfall in Anoka and that five inches of snow fell on November 16, 1955; that on December 3, 1955, he recorded a heavy snow of 8 inches that fell between December 1 and 6. The U. S. government "LOCAL CLIMATOLOGICAL DATA" (Minneapolis-St. Paul International Airport) discloses that light snow fell on November 25 to November 29, 1955, inclusive, and that snow or traces thereof were continuously on the ground during the period from November 15 through December 6, 1955.

The city agrees in its statement of fact that there was testimony that a "real good old blizzard" occurred on December 3; that 8 inches of snow fell between December 1 and 6; that the weather reports indicate a substantial amount of snow fell during the 10 days prior to the accident; that the amount of snow on the ground varied considerably during that period and that there were winds and temperature changes during the period in question. The city contends that there was testimony that the condition of the area where plaintiff fell had changed considerably during the day of the accident and that the city had no actual knowledge or complaint that anything was wrong at the place

where the accident occurred and that there was no testimony indicating that the defect complained of existed more than 10 days prior to the accident.

It seems to us upon an examination of the testimony in its entirety that there was evidence here as to snowfall between November 15 and December 6; as to the accumulation of irregular, lumpy, rough, and uneven hard-packed snow, containing depressions, hummocks, footmarks, heel marks; and as to the snow not having been shoveled in front of the Anoka Herald during the winter season of 1955 prior to the accident. Also there was testimony regarding temperatures and freezing conditions which would make it a fact question for the jury to determine whether a reasonable man could conclude that a defective condition of the sidewalk in front of the Anoka Herald had existed for 10 days prior to December 6, 1955.

Both sides cite Larson v. City of Mankato, 239 Minn. 484, 59 N. W. (2d) 312, as controlling. That case involved the same type of charter provision as the Anoka charter which requires, in the absence of actual notice, that the defective condition exist for more than 10 days immediately prior to the accident. The action was against the city of Mankato for injuries to a pedestrian, Mrs. Larson, resulting from a fall on a crosswalk where there was allegedly an accumulation of rough and uneven ice. The jury returned a verdict against the defendant city and, upon denial of its motion for judgment notwithstanding the verdict, the city appealed from the judgment. It was undisputed that there was a substantial accumulation of ice on the crosswalk in question; that this ice was rough and uneven and was rutted and ridged by tire tracks, and that this condition caused Mrs. Larson to fall. The owner of a photographic studio on the immediate locality testified that there had been rough ice on the crosswalk throughout the winter but he could not say that the condition present at the time Mrs. Larson fell had existed in identical form for more than a week prior to the accident. The city contended in that case that the evidence was insufficient to support a finding of negligence on its part. We held that the record disclosed that the city allowed a substantial accumulation of rough and uneven ice which was hazardous to foot travel to remain on the crosswalk for an extended period of time and that the

evidence presented was sufficient to make the question of city negligence an issue of fact for the jury. The city in that case also contended that the evidence was insufficient to support a finding that the condition existed for more than 10 days immediately prior to the accident as required by its city charter.

While it is true in that case that the owner of the photographic studio was reluctant to state that the exact condition had existed for more than a week, he did say that the condition of rough and uneven ice on the crosswalk had been a continuing one throughout the winter. We said there that viewing that fact in conjunction with the surrounding circumstances disclosed by the record the jury could reasonably infer that the dangerous condition had existed for more than 10 days before the accident.

Defendant argues that there is a great distinction between the facts in the Larson case and those in the instant case in that here the testimony and weather reports showed the climatic conditions changing greatly during the 10-day period and there was testimony of considerable change on December 6, whereas the testimony in the Larson case was that the same condition existed for at least a week and other evidence indicated that it may have existed for 10 days.

It is our opinion here, under the rules in connection with a directed verdict, that there was sufficient evidence in the case at bar from which a jury could reasonably infer that a dangerous condition of ridges, depressions, hummocks, and irregularities, rather than mere slipperiness, had existed for more than 10 days before the accident and that the issues should have been presented to the jury. It is therefore our opinion that the case should be remanded for a new trial.

Plaintiffs have raised other questions in connection with the admissibility of evidence but in view of our decision that the case should be tried again we will not pass upon those questions as the matter of admissibility of the evidence then presented will be within the discretion of the trial court.

Reversed and new trial granted.