**Leif M. HANSON et al., Appellants,**

v.

**FORD MOTOR COMPANY, a corporation, Appellee.**

**No. 16236.**

United States Court of Appeals Eighth Circuit.

May 17, 1960.

Joe A. Walters, Minneapolis, Minn., and Floyd V. Nichols, Albert Lea, Minn., for appellants.

Robert J. Sheran, Mankato, Minn., for appellee.

Before JOHNSEN, Chief Judge, and VAN OOSTERHOUT and BLACKMUN, Circuit Judges.

BLACKMUN, Circuit Judge.

Leif M. Hanson, then of Enderlin, North Dakota, in April or May, 1954, accepted from Ford Motor Company, a Delaware corporation, an exclusive Lincoln-Mercury agency at Albert Lea, a county seat community with a population of about 13,500 in southern Minnesota. His territory embraced Freeborn County of that State and the east half of Faribault County adjoining to the west. Hanson started business in June 1954 and had his "grand opening" in July of that year. Sixteen months later, in November, 1955, he was adjudged bankrupt on an involuntary petition.

This diversity action by Hanson against the Ford Motor Company emerges from this unsuccessful venture. It is based on fraud and, specifically, on representations made to Hanson by defendant and alleged to have been false and to have induced him to invest in this enterprise to his injury. The trustee in bankruptcy of Hanson, individually, and d/b/a Hanson Motors, is also a party plaintiff representing the unpaid creditors in the bankruptcy proceeding.

The case was tried to a jury and a verdict was returned for the plaintiffs. The defendant made the usual motions for a directed verdict at the close of the plaintiffs' case and again at the close of all the evidence. After the receipt of the verdict, and in compliance with Rule 50(b), F.R.Civ.P., 28 U.S.C.A., defendant moved for judgment in accordance with its previous motion for a directed verdict. This motion was granted and judgment for the defendant was entered. This appeal by the plaintiffs is from that judgment.

It is not necessary, in the posture in which this case comes to us, to review in detail the evidence contained in the extensive record. It will suffice to note only certain of the primary facts for background purposes. At the time of the trial Hanson was a person 57 years of age who had received some schooling beyond the 8th grade. He had begun to work for a Ford dealer at the age of 18. He later was employed briefly with an automobile agency in Minneapolis. In 1925 he began a 22-year period of employment, interrupted once for only a few months, with the defendant and served in various capacities in the Fargo, North Dakota, territory. In 1947, he purchased a Ford agency at Enderlin, near the southeast corner of North Dakota. He was there for 5 years and apparently prospered. He sold the dealership in 1952 and went searching for a larger Ford agency which would be ca-

pable of supporting not only his own family but that of his son whom he wished to have in business with him.

This search resulted in a contact in early 1954 with Twin City representatives of the Lincoln-Mercury Division of the Ford Motor Company. Lincoln-Mercury at that time had no exclusive dealer in Albert Lea and had declared the town an "open point" available for an exclusive agency. Albert Lea was regarded as a growing community with some industry; it was located in good farming country, and had other established automobile dealers selling cars in the competitive price field with Lincoln and Mercury. Conferences between Hanson, occasionally accompanied by his son or his wife, and defendant's representatives, principally Ben W. Mischke and John F. Cooney, took place in Minneapolis and at Albert Lea at various times during the succeeding weeks. There is evidence tending to show that the defendant was enthusiastic about the prospects at Albert Lea and, particularly through Mischke, represented to Hanson that he could make profits and that other Lincoln-Mercury dealers in southern Minnesota "were making proper returns on their investment" and were making money; that Hanson advised Mischke, at the latter's request, of the extent of his own available assets; that Hanson insisted on seeing actual operating statements of other exclusive Lincoln-Mercury dealers in southern Minnesota; that Mischke told him this was not possible because of company policy; that he, Mischke, however, said he would prepare a statement evidencing those figures; that in March 1954 Mischke gave Hanson a paper purporting to show sales and earnings of exclusive Lincoln-Mercury dealers in New Ulm (population 10,000 and 80 miles away), Mankato (population 18,000 and 60 miles away), and Winona (population 25,000 and 100 miles away);

that this statement indicated a net annual income of $22,400 plus a $6,000 dealer's salary which equated with about $190 per new car on indicated sales of 11 Lincolns and 108 Mercurys; that Hanson then signed the Albert Lea franchise agreement and undertook its obligations; that he leased a building there and started business in June 1954; that he invested over $37,000 in the enterprise; and that after the inception of the bankruptcy proceedings Hanson discovered that the representations as to the earnings of the exclusive Lincoln-Mercury dealers at Winona, Mankato and New Ulm were not true.

■ The principal question before us is whether there is in the record sufficient evidence to justify the jury's conclusion that all the elements of actionable fraud were present. This raises the initial and provocative question whether the state or the federal test of the sufficiency of evidence to support a jury verdict should govern in a diversity action in federal court. The Supreme Court has recently observed that it has not finally decided that question and that the lower federal courts are not in agreement upon it. Dick v. New York Life Ins. Co., 1959, 359 U.S. 437, 444–445, 79 S.Ct. 921, 3 L.Ed.2d 935, and cases cited. See also 5 Moore's Federal Practice (2 Ed. 1951) § 38.10. Although this court, prior to Dick, apparently held, in seeming opposition to some other circuits, that the state standard of sufficiency of the evidence is to be applied,[1] in 3 recent cases, where the state and federal standards were regarded as substantially alike and the parties assumed the state standard was applicable, this basic question, in line with Dick's example, specifically has been left undecided.[2] So here, because the parties have not raised the point, and because the Minnesota standard that a jury verdict "will not be set aside unless it is manifestly and

1. Clay County Cotton Co. v. Home Life Ins. Co., 8 Cir., 113 F.2d 856, 861; Stofer v. Montgomery Ward & Co., 8 Cir., 249 F. 2d 285, 289; Continental Can Co. v. Horton, 8 Cir., 250 F.2d 637, 640.

2. Ford Motor Co. v. Mondragon, 8 Cir., 1959, 271 F.2d 342, 345; Bennett v. Wood, 8 Cir., 1959, 271 F.2d 349, 351; Lewis v. Nelson, 8 Cir., 1960, 277 F.2d 207.

palpably contrary to the evidence as a whole", Haugen v. Dick Thayer Motor Co., 253 Minn. 199, 214, 91 N.W.2d 585, 594; Barnes v. Northwest Airlines, Inc., 233 Minn. 410, 433, 47 N.W.2d 180, 193, and that it will be sustained "if it is possible to do so on any reasonable theory of the evidence," Bush v. Havir, 253 Minn. 318, 320, 91 N.W.2d 784, 786, or "if the evidence reasonably or fairly tends to sustain it," Delyea v. Goossen, 226 Minn. 91, 99, 32 N.W.2d 179, 184, or if "there is any competent evidence reasonably tending to sustain the verdict," Solosky v. J. A. Johnson Co., 223 Minn. 390, 392, 27 N.W.2d 282, 283, does not appear to us to be unlike the federal standard that there be "substantial evidence," Terminal R. Ass'n of St. Louis v. Howell, 8 Cir., 165 F.2d 135, 138; Smails v. O'Malley, 8 Cir., 127 F.2d 410, 412; Love v. United States, 8 Cir., 141 F.2d 981, 982; Noble v. United States, 8 Cir., 98 F.2d 441, 442; Gunning v. Cooley, 281 U.S. 90, 50 S.Ct. 231, 74 L. Ed. 720; Brady v. Southern Ry. Co., 320 U.S. 476, 479, 64 S.Ct. 232, 88 L.Ed. 239, or a "reasonable basis in fact" for the jury's conclusion, Terminal R. Ass'n of St. Louis v. Fitzjohn, 8 Cir., 165 F.2d 473, 478, 1 A.L.R.2d 290, and that the verdict will not be set aside unless "there is utterly no basis on which it can reasonably rest under the evidence," Samuelson v. Central Nebraska Public Power & Irrigation Dist., 8 Cir., 125 F.2d 838, 839, we regard the state standard, for purposes of this appeal, as applicable.[3]

■ The Minnesota Supreme Court has pointed out, however, that in Minnesota "the entire evidence" or "the evidence as a whole" is to be the measure for action on such a motion and not merely that part of the evidence which is favorable to a contrary verdict. Hanson v. Homeland Ins. Co. of America, 232 Minn. 403, 404–405, 45 N.W.2d 637, 638; Hanrahan v. Safway Steel Scaffold Co. of Minnesota, 233 Minn. 171, 176–177, 46 N.W.2d 243, 247; Francis v. Anderson, 254 Minn. 341, 343–344, 95 N.W.2d 79, 81. Thus in Minnesota a mere "scintilla of evidence" is not sufficient to create a question for the jury. The Minnesota court has also said that the granting of the motion "is a right to be cautiously and sparingly exercised," Kolatz v. Kelly, 244 Minn. 163, 166, 69 N.W.2d 649, 652; Caron v. Farmers Insurance Exchange, 252 Minn. 247, 255, 90 N.W.2d 86, 92; Hall v. City of Anoka, 256 Minn. 134, 97 N.W.2d 380, 382.

These, then, are the applicable Minnesota standards which, following the Dick suggestion, we necessarily apply in this case to test the sufficiency of the evidence.

■■ The components of actionable fraud are, of course, a matter of substantive law and therefore, since Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, are to be determined for this case by the law of Minnesota where the wrong, if any, took place. Iasigi v. Brown, 17 How. 183, 194, 15 L.Ed. 208; Smyth Sales, Inc. v. Petroleum Heat & Power Co., 3 Cir., 128 F.2d 697; Western Newspaper Union v. Woodward, D.C.W.D.Mo., 133 F.Supp. 17, 23–24; Restatement of the Law, Conflict of Laws, p. 457 and § 378. The Supreme Court of that state has described the basic elements of a damage action for fraud as follows:

"1. The rule we follow in this state in establishing a fraudulent representation is stated in 8 Dunnell, Dig. (3 ed.) § 3818, as follows:

" 'A person is liable for fraud if he makes a false representation of a past or existing material fact susceptible of knowledge, knowing it to

---

3. It is interesting to observe that the Minnesota Supreme Court has regarded the question of sufficiency of the evidence to present a jury question as a matter of procedural rather than of substantive law and hence it has concluded that the law of the forum governs. Stotzheim v. Djos, 256 Minn. 316, 98 N.W.2d 129, 131 (Footnote 2); Franklin v. Minneapolis, St. P. & S. S. M. Ry. Co., 179 Minn. 480, 487, 229 N.W. 797, 800.

be false, or as of his own knowledge without knowing whether it is true or false, with intention to induce the person to whom it is made to act in reliance upon it, or under such circumstances that such person is justified in acting in reliance upon it, and such person is thereby deceived and induced to act in reliance upon it, to his pecuniary damage.'

"2. An unqualified affirmation amounts to an affirmation of one's own knowledge.

"3. It is immaterial whether a statement made as of one's own knowledge is made innocently or knowingly. An intent to deceive no longer is necessary. Nor is it necessary to prove that defendants knew the representations were false.

"4. Fraudulent intent may be proved by showing that the party knew his statements to be false; or that, having no knowledge of their truth or falsity, he did not believe them to be true; or that, having no knowledge of their truth or falsity, he yet represented them to be true of his own knowledge." Swanson v. Domning, 251 Minn. 110, 114, 86 N.W.2d 716, 720, and cases cited.

To the same effect are Spiess v. Brandt, 230 Minn. 246, 250, 41 N.W.2d 561, 565, 27 A.L.R.2d 1; L'Evesque v. Rognrud, 254 Minn. 55, 57, 93 N.W.2d 672, 675; Hafner v. Ritzinger, 256 Minn. 196, 97 N.W.2d 839, 842. If we list these factors numerically, we have:

1. There must be a representation;

2. That representation must be false;

3. It must have to do with a past or present fact;

4. That fact must be material;

5. It must be susceptible of knowledge;

6. The representer must know it to be false, or in the alternative, must assert it as of his own knowledge without knowing whether it is true or false;

7. The representer must intend to have the other person induced to act, or justified in acting upon it;

8. That person must be so induced to act or so justified in acting;

9. That person's action must be in reliance upon the representation;

10. That person must suffer damage;

11. That damage must be attributable to the misrepresentation, that is, the statement must be the proximate cause of the injury.

These elements must be affirmatively proved; they are not to be presumed. 8 Dunnell, Minnesota Digest (3 ed.) Fraud, § 3837; Lehman v. Hansord Pontiac Co., 246 Minn. 1, 10, 74 N.W.2d 305, 311–312; Parrish v. Peoples, 214 Minn. 589, 591, 9 N.W.2d 225, 227.

In its order granting the motion for judgment, the trial court said:

"In determining this motion, the Court has considered all the evidence in the most favorable light to plaintiff. Consequently, the Court must recognize that there is sufficient evidence to sustain a finding of false representations; that is, that the representatives of the defendant company stated on several occasions early in 1954 to Hanson to the effect that the Lincoln-Mercury dealers in New Ulm, Mankato and Winona were then making money in the operation of such dealerships, substantially $22,000 per annum, reflecting a net profit of $190 and $195 per car, together with a dealer's salary of some $500 per month, and that such representations were not true. The evidence must be considered as sustaining a finding that Hanson relied upon these representations and was induced thereby to invest some $39,485 in the establishment and conduct of a Lincoln-Mercury dealership at Albert Lea from about July 15, 1954, to about August 15, 1955, when he became insolvent and had to close his dealership. The jury's verdict likewise must be sustained as to the sufficiency of the evidence in support of a finding that the representations of the defendant were knowingly false or made as of its own knowledge

without knowing whether such statements were true or false. Moreover, to the extent of the damages returned, the jury must have found that Hanson's losses were not due to his own derelictions or shortcomings as an automobile dealer."

From this quotation it is evident that most of the essential elements described above for a damage action for fraud were specifically found by the trial court to have sufficient evidentiary basis in the record here. These factors are those listed above as Nos. 1, 2, 3, 5, 6, 7, 8, 9 and 10. The correctness of the trial court's determination that these 9 factors have adequate support in the record is not now before us, for the present appeal is by the plaintiffs and not by the defendant. For purposes of this appeal we accept these factors as present and need not re-examine the district court's conclusions with respect to them. This leads us, then, to the narrow question whether the 2 remaining factors, Nos. 4 and 11, having to do, respectively, with *materiality* and *proximate cause*, find support in the evidence.

At this point, however, we are confronted by the defendant's argument that, in determining the satisfaction here of the necessary element of proximate cause, any responsibility for the effect (the damage) which flows from the cause (the misrepresentation) is to be further limited to what is reasonably *foreseeable* by the misrepresenter (or by a reasonable person) or, in other words, to those results of his acts which lie within his contemplation at the time of the misrepresentation. Defendant urges this narrowing concept of proximate cause apparently on 2 grounds: (1) that the proposition has already become "the law of the case", and (2) that the Minnesota decisions require it. We examine these contentions in turn.

(1) The claim is made that the element of foreseeability was injected into the case in the court's instructions to the jury, that the plaintiffs took no exception to the use of the "foreseeable" language by the court in those instruc-

tions, that counsel in fact agreed that any damages had to be reasonably foreseeable by the defendant, and thus that the element of foreseeability has become "the law of the case."

A review of the instructions does disclose multiple references to the concept that any damages must be "reasonably foreseeable." Use of the word "foreseeable" or one of its forms appears no less than 14 times in the charge and supplemental charge. It was also carried forth into the court's order granting the motion for judgment where it was said:

"At the time of trial, all counsel agreed that the causal connection between the fraud and the damages must be such that the damages not only had to be the proximate result of the fraud, but to be recoverable the damages must be such as should have been reasonably foreseeable by the defendant at the time the fraud was practiced. The jury was instructed accordingly. No exception was taken to this portion of the charge; consequently, the principle of the foreseeability of the damages must be accepted as the law of the case."

The plaintiffs seek to explain their absence of objection to the instructions on the ground that the use by the court of language of foreseeability in the instructions was obviously and properly directed toward elimination of elements of speculation in determining damages and that it was only upon the issuance of the order granting the motion for judgment that the trial court's specification of foreseeability as a separate and additional factor in actionable fraud appears in the case.

The plaintiffs on this appeal are not questioning the instructions as such and, not having noted an exception, they are not now, in any event, in a position to complain about the "foreseeable" language of those instructions in whatever mold it may have been cast. Rule 51, F.R.Civ.P.; Coca Cola Bottling Co. of Black Hills v. Hubbard, 8 Cir., 203 F.2d 859, 862. Thus, we need not now con-

cern ourselves with the question whether the trial court in its instructions to the jury used its language of foreseeability merely in an effort to exclude damages of a remote character, or whether it felt foreseeability to be an essential element in actionable fraud.

This leaves, however, the further and important question whether this court may determine whether the trial court regarded foreseeability as an essential element in passing upon the motion for judgment and, if so, the propriety thereof, or whether the concept of "the law of the case" prevents such action by this court.

We feel that review is open to us. This court's unwelcome reception of the use of the phrase "the law of the case" and the limited extent of its proper application is evident from the following language of the Coca Cola case, supra, at page 862 of 203 F.2d:

"It is true, of course, that an appellant may not challenge on review the correctness of instructions to which he took no exceptions or only a general exception. * * * In that sense, and in that sense only, it may be said that the instructions to which no exceptions are taken become the law of the case for determining whether the instructions are subject to review on appeal. * * * But in determining whether a trial court has erred in denying a motion for a directed verdict made at the close of the evidence, it is the applicable law which is controlling, and not what the trial court announced the law to be in his instructions. This Court must ascertain for itself what the applicable law is, whether the instructions were excepted to or not." (Citations omitted.)

The fact that in the Coca Cola case there were involved a motion for a directed verdict and its denial and the question was one of negligence and the sufficiency of the evidence to submit the case to the jury, whereas in the present litigation there are involved a motion for judgment notwithstanding and its allowance and the question concerns the components of actionable fraud and the sufficiency of the proof thereof, of course affords no valid distinction between that case and this and the language quoted is fully pertinent here. A proper motion for judgment under Rule 50(b) and its allowance will, to paraphrase the language employed in the Coca Cola case, preserve for review the question whether, in granting that motion, correct legal principles were applied by the trial court. We therefore hold that, irrespective of and apart from the instructions to the jury and the lack of an exception thereto by the plaintiffs, this court may review and satisfy itself as to the substantive Minnesota law of the composition of actionable fraud. No theory of "the law of the case" prevents this.

Furthermore, any agreement of counsel as to the composition of actionable fraud has no binding legal effect " * * * since the court cannot be controlled by agreement of counsel on a subsidiary question of law." Swift & Co. v. Hocking Valley Ry. Co., 243 U.S. 281, 289, 37 S.Ct. 287, 289, 290, 61 L.Ed. 722.[4]

(2) This takes us then to the defendant's further contention that under Minnesota law only those damages which are foreseeable or are in the contemplation of the wrongdoer or of a reasonable person fall within the concept of proximate cause. It must be conceded that there are expressions in

**4.** To the same effect are Estate of Sanford v. Commissioner, 308 U.S. 39, 51, 60 S.Ct. 51, 84 L.Ed. 20; Case v. Los Angeles Lumber Products Co., 308 U.S. 106, 115, 60 S.Ct. 1, 84 L.Ed. 110; Pettibone v. Cook County, Minnesota, 8 Cir., 120 F.2d 850, 856; Andrews v. St. Louis Joint Stock Land Bank, 8 Cir., 107 F.2d 462, 470, certiorari denied sub. nomine Cantley v. Andrews, 309 U.S. 667, 60 S.Ct. 592, 84 L.Ed. 1014; Tynan v. KSTP Incorporated, 247 Minn. 168, 176, 77 N.W. 2d 200, 205; Yellow Mfg. Acceptance Corp. v. Handler, 249 Minn. 539, 542, 83 N.W.2d 103, 106; Kobler v. Heins, 189 Minn. 213, 216, 248 N.W. 698, 700.

some Minnesota cases cited by the defendant and in certain others which at first reading might be capable of this interpretation. Thus in Walsh v. Paine, 123 Minn. 185, 189, 143 N.W. 718, 719, it was said:

> "In cases of fraud or deceit, the defendant is responsible for those results which must be presumed to have been within his contemplation at the time of the commission of the fraud, * * *"

In Sargent v. Mason, 101 Minn. 319, 323, 112 N.W. 255, 257, and in Tarnowski v. Resop, 236 Minn. 33, 39, 51 N.W.2d 801, 804, the following language from 1 Sutherland on Damages (3rd Ed.) § 45 is quoted:

> "The wrong-doer is answerable for all the injurious consequences of his tortious act, which according to the usual course of events and the general experience were likely to ensue, and which, therefore, when the act was committed, he may reasonably be supposed to have foreseen and anticipated."

And in Smith v. Bolles, 132 U.S. 125, 130, 10 S.Ct. 39, 40, 33 L.Ed. 279, the following quotation from Greenleaf was employed:

> " 'The damage to be recovered must always be the natural and proximate consequence of the act complained of,' says Mr. Greenleaf, Vol. 2, § 256; and 'the test is,' adds Chief Justice Beasley, in Crater v. Binninger, 33 N.J.Law (4 Vroom) 513, 518, 'that those results are proximate which the wrong-doer, from his position, must have contemplated as the probable consequence of his fraud or breach of contract.' " [5]

A careful reading of these cases discloses, however, that the phrase either was employed in connection with concern about the remoteness of injury, as in Walsh v. Paine, or with the enunciation of the "out-of-pocket" measure of damage referred to below, as in Smith v. Bolles, or as another way of saying that the damage must be the natural and probable consequence of the misrepresentation, as in the Sargent, Tarnowski and Boatmen's cases. It is to be noted also that any significance which Sargent v. Mason might have had in this respect is greatly weakened by the later case of Bergquist v. Kreidler, 158 Minn. 127, 131–132, 196 N.W. 964, 965–966, where the author of the opinion said:

> "Personally I have never been able to see any basis for the reference, in discussing measures of damage, to what the parties may have contemplated or to what they may be supposed to have contemplated. My own idea is that whatever a wrong-doer and his adversary may or may not have contemplated, as the result either of breach of contract or a tort, has nothing to say in answer to the question whether a given element of resulting loss should be considered legal damage. The rule of causation furnishes a better formula for the solution of such a problem.

> "Where the standard of contemplation has been used at all, the courts have consulted their own notions, rather than any that might have been attributed to the parties. In other words, they have in fact determined, not what was contemplated, but whether a given event is the direct result of the wrongful act. This finds apt illustration in the terse statement of Mr. Justice Collins, speaking for this court in Schumaker v. St. Paul & Duluth Ry. Co., 46 Minn. 39, 42, 48 N.W. 559, 12 L.R.A. 257:

> " 'He who commits a trespass must be held to contemplate all the damages which may legitimately flow from his illegal act, whether he may have foreseen them or not; and,

5. This language has been quoted by this court in Boatmen's National Co. v. M. W. Elkins & Co., 63 F.2d 214, 217, a case arising out of Arkansas and decided before Erie R. Co. v. Tompkins, supra.

so far as it is plainly traceable, he must make compensation for the wrong. The damages cannot be considered too remote if, according to the usual experience of mankind, injurious results ought to have been apprehended. It is not necessary that the injury, in the precise form in which it in fact resulted, should have been foreseen. It is enough that it now appears to have been a natural and probable consequence.' "

As the Minnesota court has noted in Wallace v. Hallowell, 56 Minn. 501, 506, 58 N.W. 292, 293:

" * * * the rule is, and always has been, that in actions of deceit, or for fraudulent representations, the damages recoverable are all those which naturally and proximately result from the fraud. Courts may have sometimes failed to use strictly accurate terms in stating the rule, and may have sometimes failed to apply it correctly to particular facts, but no court has ever questioned the rule itself."

In any event, the annihilation of "contemplation" as a limiting factor to the usual concept of proximate cause in Minnesota fraud cases is convincingly clear from the recent case of Lowrey v. Dingmann, 1957, 251 Minn. 124, 127, 86 N.W.2d 499, 502:

"The party guilty of the fraud is liable for all out-of-pocket-loss damages proximately caused by the fraud, even though such damages were not within the contemplation of the wrongdoer or his adversary."

This establishes without room for argument that the long announced general concept of proximate cause, in the sense of "natural and probable consequence", still prevails in Minnesota.[6]

In this connection we should note that although the Minnesota Court has said,

"In this state the rule which permits a recovery in case of fraud is liberal", Woodward v. Western Canada Colonization Co., 134 Minn. 8, 11, 158 N.W. 706, 707, L.R.A.1917C, 270, damages for deceit are governed by the so-called "out-of-pocket" minority rule, rather than the "benefit-of-the-bargain" majority rule. Lehman v. Hansord Pontiac Co., supra, at page 10 of 246 Minn., at page 311 of 74 N.W.2d, and cases cited; Lowrey v. Dingmann, supra, at page 127 of 251 Minn., at page 502 of 86 N.W.2d. The measure of damages, as was said in the Lehman case, is then the "loss naturally and proximately resulting from the fraud, and it will usually be the difference between what the plaintiff parted with and what he got", not what he "might have gained through the transaction but what he lost, by reason of defendant's deception", plus, as was said in the Lowrey case, "such other or special damages as were naturally and proximately caused by the fraud prior to its discovery. * * * "

We therefore conclude that the usual concept of proximate cause in actionable fraud cannot be narrowed, under the applicable Minnesota decisions, by the engraftation of a separate and additional element of foreseeability. We feel, furthermore, that the trial court's granting of the defendant's motion was based upon this mistaken concept of the need of such an additional element. This is evident from the following excerpts from that order:

" * * * the principle of the foreseeability of the damages must be accepted as the law of the case. Obviously, in determining whether the damages Hanson seeks to recover were foreseeable as the result of defendant's fraud, the profits * * * However, the query that is directly presented by this motion is: Should the Ford Motor Company * * *

**6.** Reynolds v. Franklin, 44 Minn. 30, 31, 46 N.W. 139; Wallace v. Hallowell, supra, at pages 506 and 508 of 56 Minn., at pages 293-294 of 58 N.W.; Townsend v. Jahr, 147 Minn. 30, 32-33, 179 N.W. 486, 487; Sampson v. Penney, 151 Minn. 411, 413, 187 N.W. 135; Perkins v. Meyerton, 190 Minn. 542, 545, 251 N.W. 559, 560; Rosenquist v. Baker, 227 Minn. 217, 224, 35 N.W.2d 346, 350.

have foreseen that false representations as to * * *

· "It may seem reasonable to conclude that * * * it should have foreseen that Hanson's operations in a Lincoln-Mercury agency at Albert Lea would fall below * * * Certainly, unless the defendant was aided by a crystal ball, it would seem that there is no possible basis for concluding that it should have foreseen from its experience . * * * there is no sound or rational basis for a finding that such misrepresentations were the proximate and foreseeable cause of the losses which Hanson experienced. * * *

"The question of proximate cause and foreseeability of the damages sought herein troubled the Court when the case was submitted to the jury. However, after further reflection and consideration, I am clear that plaintiff has failed to sustain the burden of proof that the damage which he seeks to recover was the proximate and foreseeable result of any wrong perpetrated by the defendant. The attempt to translate any misrepresentations of the defendant into the causal and foreseeable damages sustained by Hanson cannot be upheld as a matter of law."

▉ We return, then, to the narrow question whether there is sufficient evidence of materiality and proximate cause to support the jury's verdict for the plaintiffs. At this juncture we find pertinent (a) the Minnesota Supreme Court's definitions of the factor of materiality in fraud,

"Misrepresentations, in order to constitute actionable fraud, must be as to material facts of a nature to affect the conduct of others, * * *" Griffin v. Farrier, 32 Minn. 474, 21 N.W. 553–554.

"Not every representation is material. A representation is not ma-terial unless it prejudices the party or is germane to the fraud alleged." Rien v. Cooper, 211 Minn. 517, 523, 1 N.W.2d 847, 851.

"Here we have a false representation as to a material fact; that is, a fact or facts material to the purchaser with reference to the question whether for certain reasons stated the purchase will be for his advantage." Lehman v. Hansord Pontiac Co., supra, at page 9 of 246 Minn., at page 311 of 74 N.W.2d.

(b) that Court's definition of the factor of proximate cause in fraud,

" * * * plaintiff may recover for any injury which is the direct and natural consequence of his acting on the faith of defendant's representations. It must appear that the fraud and damage sustain to each other the relation of cause and effect, or at least that the damage might have resulted directly from the fraud. * * * While the sequence need not be so close as in actions of contract, it still must appear in an appreciable sense that the damage flowed from the fraud as the proximate and not the remote cause." Walsh v. Paine, supra, at pages 189, 190 of 123 Minn., at page 719 of 143 N.W.,

and (c) the established rule that in passing upon the motion for judgment, the trial court and this court are (1) to consider the evidence in the light most favorable to the plaintiffs as the parties prevailing with the jury; (2) to assume that all conflicts in the evidence were resolved by the jury in favor of the plaintiffs; (3) to assume as proved all facts which plaintiffs' evidence tends to prove; (4) to give the plaintiffs the benefit of all favorable inferences which may reasonably be drawn from the facts proved; and (5) to deny the motion if, reviewing the evidence in this light, reasonable men could differ as to the conclusions to be drawn from it.[7]

7. Thieman v. Johnson, 8 Cir., 257 F.2d 129, 130; Chicago Great Western R. Co. v.
Scovel, 8 Cir., 232 F.2d 952, 955, certiorari denied 352 U.S. 835, 77 S.Ct. 53,

The representations concerned earnings of other exclusive Lincoln-Mercury dealers in 3 cities in southern Minnesota and were, as the trial court said,

" * * * that the representatives of the defendant company stated on several occasions early in 1954 to Hanson to the effect that the Lincoln-Mercury dealers in New Ulm, Mankato and Winona were then making money in the operation of such dealerships, substantially $22,000 per annum, reflecting a net profit of $190 and $195 per car, together with a dealer's salary of some $500 per month, and that such representations were not true."

These were misrepresentations of fact. We also feel that, within the definitions above, they were misrepresentations of material fact. We recognize that statements as to net profits per car can be elusive, for an automobile dealer's activities embrace more than the selling of new cars. Profits or losses flow from these other endeavors and necessarily affect total income. Net per car can be no more than a measure of profits just as is the expression of net as a percentage of gross, but the fundamental fact represented here was that corresponding dealers in the 3 localities were *then making money* in the area of $22,000 annually plus a dealer's salary. In fact, as the defendant knew, they were then producing no such profits. New Ulm showed a loss with no salary for the last 4 months of 1953, a profit for the first 4 months of that year (no dealer was operating in the intervening months), before salary, of less than $8,000, and a loss of more than $3,500 with no salary for the first 4 months of 1954. Mankato for 1953 showed a loss before salary of over $5,000 and a loss of more than $10,000 with no salary for the first 4 months of 1954. Winona returned a profit of less than

$11,000 before salary for 1953 and one of less than $5,000 before salary for 1954's first 4 months. As the defendant has attempted to explain, there may well have been mitigating circumstances for the poor showing of the Mankato and New Ulm outlets at the time but that does not cure the misrepresentation. The evidence does show that dealers in the 3 cities and perhaps generally throughout the Minneapolis-St. Paul district were making money in 1950, 1951 and 1952 at or beyond, with some exceptions, the $22,000 rate after salary; but the returns were noticeably declining year by year and, most important, the particular representations supported by the evidence, as the court has found, were made to Hanson in early 1954 and were to the effect that the 3 dealers were then making money at the stated rate.

Information about these earnings was of vital concern to Hanson. He had endeavored for some time to obtain it. When he did receive it, he, as the court again found, relied upon it and was induced to act by way of investing his funds in the Albert Lea enterprise. Misrepresentations as to past or present income and net profits have been held material in Minnesota fraud actions, Spiess v. Brandt, supra, at pages 250–252 of 230 Minn., at page 565 of 41 N.W.2d; Perkins v. Meyerton, supra; O'Neil v. Davidson, 149 Minn. 457, 184 N.W. 194. Here certainly the representation was of a nature which affected Hanson's conduct, which was germane to the fraud alleged and which was of concern to him in determining whether to engage in the Albert Lea venture.

A like result follows with respect to the factor of proximate cause. The problem is simplified by the court's finding that the jury was justified in concluding that Hanson was induced by the misrepresentation to make his in-

---

1 L.Ed.2d 54; Coca Cola Bottling Co. of Black Hills v. Hubbard, 8 Cir., at page 860 of 203 F.2d, supra; Gunning v. Cooley, supra, at page 94 of 281 U.S., at page 233 of 50 S.Ct.; Ryan v. Griffin, 241 Minn. 91, 97, 62 N.W.2d 504, 508–509; Caron v. Farmers Insurance Exchange, 252 Minn. 247, 255, 90 N.W. 2d 86, 92; Lee v. Smith, 253 Minn. 401, 415–416, 92 N.W.2d 117, 127–128; Minder v. Peterson, 254 Minn. 82, 86, 93 N.W.2d 699, 703; Hall v. City of Anoka, 256 Minn. 134, 97 N.W.2d 380, 382.

598

vestment of over $37,000, by the elimination of the troublesome element of foreseeability and by the jury's obvious conclusion that Hanson's losses—to the extent of the verdict at least—were not due to his own derelictions or shortcomings as an automobile dealer. There are, of course, Minnesota cases where the injury claimed has been held not to have been occasioned by the representation or to be too remote.[8] But there are also Minnesota cases where the court has found the necessary cause and effect relationship.[9] We feel that the record here warrants the finding that Hanson's injuries, in the amount the jury determined, were "the direct and natural consequences of his acting on the faith of defendant's representations" and that we have here the cause and effect and the damage resulting directly from the fraud required by the standard of Walsh v. Paine, supra.

We are fully aware that responsibility, even for fraud, has its limitations; that Hanson was an experienced automobile dealer; that the representer is not a guarantor; that the victim may not irresponsibly accumulate his losses to the detriment of the misrepresenter; and that an automobile manufacturer, such as the defendant here, does not gain by any dealer's collapse. Conversely, however, misrepresentation with damage entails its penalty and cannot always hide behind the facade of mere puffing.

We find no merit in the defendant's alternate contention that the action of the court below is to be sustained on the theory that Hanson or his trustee waived the fraud.

The defendant made no alternative motion for a new trial. The judgment, therefore, is reversed with directions to reinstate the original judgment for the plaintiffs based upon the jury's verdict.

8. Huffman v. Long, 40 Minn. 473, 42 N.W. 355; Winston v. Young, 52 Minn. 1, 53 N.W. 1015; Sampson v. Penney, supra; Dear v. Remington, 176 Minn. 559, 223 N.W. 925; Rehg v. Vermilion Boat & Outing Co., 181 Minn. 92, 231 N.W. 611;

Edward Thompson Co. v. Peterson, 190 Minn. 566, 252 N.W. 438; Rien v. Cooper, supra.

9. Bergquist v. Kreidler, supra; Perkins v. Meyerton, supra; Lowrey v. Dingmann, supra; Walsh v. Paine, supra.